# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN LUX RESEARCH,**<br>766 E. Main Street, Coppell, Texas, 75019<br>**LINDSAY OLSON,**<br>766 E. Main Street, Coppell, Texas, 75019<br><br>                    *Plaintiffs,*<br>**v.**<br><br>**HULL MCGUIRE PC,**<br>1420 N Street, N.W.,<br>Washington, D.C. 20005,<br>**JOHN DANIEL HULL,**<br>1420 N Street, N.W.,<br>Washington, D.C. 20005,<br>**DAVID B. SMITH,**<br>108 North Alfred Street, 1st Floor<br>Alexandria, VA 22314<br>**NICHOLAS D. SMITH,**<br>1123 Broadway<br>Townsend Building, Suite 909<br>New York, NY 10010<br>**DAVID B. SMITH, PLLC,**<br>108 North Alfred Street, 1st Floor<br>Alexandria, VA 22314<br>**CARMEN D. HERNANDEZ,**<br>7166 Mink Hollow Road<br>Highland, MD 20777,<br>**NAYIB HASSAN,**<br>6175 NW 153 Street, Suite 209<br>Miami Lakes, FL 33014,<br>**LAW OFFICES OF NAYIB HASSAN, P.A.,**<br>6175 NW 153 Street, Suite 209<br>Miami Lakes, FL 33014,<br>**STEVEN ALAN METCALF, II, and**<br>99 Park Avenue, 6th Floor<br>New York, NY 10016,<br>**METCALF & METCALF, P.C.,**<br>99 Park Avenue, 6th Floor<br>New York, NY 10016,<br><br>                    *Defendants.* | **COMPLAINT FOR**<br>**COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiffs **IN LUX RESEARCH** and **LINDSAY OLSON** file their Complaint against Defendants **HULL MCGUIRE PC, JOHN DANIEL HULL, DAVID B. SMITH, NICHOLAS D. SMITH, DAVID B. SMITH, PLLC, CARMEN D. HERNANDEZ, NAYIB HASSAN, LAW OFFICES OF NAYIB HASSAN, P.A., STEVEN ALAN METCALF, II, METCALF & METCALF, P.C.,** and allege upon personal knowledge as to their own conduct, and on information and belief based on the investigation of their counsel, as to all other conducted alleged herein, as follows:

## I.  INTRODUCTION

1.      Plaintiffs In Lux Research and Lindsay Olson conducted a Multi-district Comparative Community Attitude Study (the "Study") and authored the Multi-district Comparative Community Attitude Report (the "Report") related to January 6, 2021 criminal trials in this District.

2.      Defendants, all law firms and lawyers representing various January 6, 2021 criminal defendants, used Plaintiffs' Report and Study without compensation.

3.       Plaintiffs' complaint arises out of copyright infringement, breach of contract, quantum meruit, unjust enrichment, fraud and promissory fraud against all Defendants.

4.      Plaintiffs allege that Defendants are jointly and severally liable for direct and incidental damages.

## II. PARTIES

5.      Plaintiff In Lux Research is a sole proprietorship and is a citizen of Texas, owned by Plaintiff Lindsay Olson.

6.      Plaintiff Lindsay Olson is a citizen of Texas.

7.      Defendant HULL MCGUIRE PC is citizen of District of Columbia with its principal place of business at 1420 N Street, N.W., Washington, D.C. 20005.

8.      Defendant JOHN DANIEL HULL is on information and belief, a citizen of DC and can be served at his office at 1420 N Street, N.W., Washington, D.C. 20005.

9.      Defendant DAVID B. SMITH is on information and belief, a citizen of Virginia and can be served 108 North Alfred Street, 1st Floor Alexandria, VA 22314.

10.     Defendant NICHOLAS D. SMITH is on information and belief, a citizen of New York, and can be served at 1123 Broadway Townsend Building, Suite 909, New York, NY 10010.

11.     Defendant DAVID B. SMITH, PLLC is a citizen of Virginia with its principal place of business at 108 North Alfred Street, 1st Floor, Alexandria, VA 22314.

12.     Defendant CARMEN D. HERNANDEZ is a citizen of Maryland and can be served at her law office at 7166 Mink Hollow Road, Highland, MD 20777.

13.     Defendant NAYIB HASSAN is a resident of Florida and can be served at 6175 NW 153 Street, Suite 209, Miami Lakes, FL 33014.

14.     Defendant LAW OFFICES OF NAYIB HASSAN, P.A. is a citizen of Florida and has its principal place of business at 6175 NW 153 Street, Suite 209, Miami Lakes, FL 33014.

15.     Defendant STEVEN ALAN METCALF, II is a citizen of New York on information and belief and can be served at 99 Park Avenue, 6th Floor, New York, NY 10016.

16.     Defendant METCALF & METCALF, P.C. is a citizen of New York and has its principal place of business at 99 Park Avenue, 6th Floor, New York, NY 10016.

17.     Whenever it is alleged that Defendants committed any act or omission, it is meant that the Defendants acted jointly through their owners, officers, directors, vice-principals, firms,

3

agents, servants, directors, executives, lawyers, management, employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, partners, vice-principals, executives, management, agents, servants, or employees.

### III. JURISDICTION AND VENUE

18.     This action arises under the federal Copyright Act, 17 U.S.C. §§ 101, *et. seq.*

19.     This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and because a federal question is involved regarding infringement of copyright.

20.     Under 28 U.S.C. Section 1400, civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found or where a defendant has committed acts of infringement and has a regular and established place of business.

21.     This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants have infringed Plaintiff Olson's copyright within this District and, as a result, Plaintiff has been harmed in this District by each of Defendant, and because a substantial part of the wrongful conduct giving rise to this claim occurred from within this District.

22.     This Court has *in personam* jurisdiction over Defendants because Defendants availed themselves of the privileges of conducting business in this District and Defendants incurred a benefit from Plaintiffs here, thus it is reasonable for Defendants to submit to the jurisdiction of this federal district court.

## IV. FACTUAL ALLEGATIONS

23.     On August 31, 2022, Defendant John Daniel Hull ("Defendant Hull"), a criminal defense attorney practicing in the District of Columbia, contacted Plaintiffs via email to inquire about Plaintiffs conducting a Multi-district Comparative Community Attitude Follow-on Study and written report, building on Plaintiffs' earlier testing for potential bias in the jury pool of the Federal District for the District of Columbia.

24.     Defendant Hull stated that he was inquiring at the request of and on behalf of attorneys for five criminal defendants (hereafter "Five J6 Clients") then-named in Case No. 21-cr-125-TJK, which is pending in this District.

25.     Defendant Hull explained that if Plaintiffs would complete such a study and author a written report with Plaintiffs' interpretation of findings from a study, the attorneys for the Five J6 Clients would use such report to supplement their pending Motion to Transfer Venue.

26.     On September 9, 2022, Defendant Hull, speaking with actual and/or apparent authority on behalf of the same attorneys and their law firms (hereafter the named "Defendants"), emailed Plaintiffs again, this time referencing and resubmitting the August 31, 2022, email where Defendant Hull had inquired at the request of and on behalf of attorneys for the Five J6 Clients about the possibility of Plaintiffs conducting a Multi-district Comparative Community Attitude Follow-on Study and creating a report that could be filed to support the pending Motion to Transfer Venue Defendants' had filed on behalf of the Five J6 Clients.

27.     On September 10, 2022, Plaintiffs and Defendants spoke by telephone wherein Defendant Hull, on behalf of all Defendants named herein, notified Plaintiffs that Defendants' deadline to file supporting documents for the Motion to Transfer Venue was approaching and pleaded with Plaintiffs to prioritize the project over their other projects.

28.     Defendant Hull told Plaintiffs that Defendants had authorized a budget of $30,000 and that if the cost was higher, Defendant Hull would need to return to all Defendants for approval, which would further limit the time available for Plaintiffs to complete the project.

29.     Plaintiffs agreed to accept the $30,000 Defendants offered to complete the Follow-on Study (the "Follow-on Study") and author a written report (the "Report") detailing the findings and comparing these new findings to those of an earlier study Plaintiffs had performed on the same subject matter.

30.     Plaintiffs agreed to create Plaintiffs' Report and authorized Defendants to file the Report, once created, into Case No. 21-cr-125-TJK on behalf of their Five J6 Clients, in exchange for the agreed payment of $30,000 by Defendants for both the Study and the Report.

31.     Defendants, through Defendant Hull, asked Plaintiffs to begin work immediately on the Follow-on Study.

32.     Defendants assured Plaintiffs that Defendants would pay Plaintiffs, and Plaintiffs agreed to send a detailed breakdown to support the $30,000 cost when Plaintiffs could gather more precise estimates of the expenses Plaintiffs would likely incur to perform the Follow-on Study and create the Report.

33.     On September 11, 2022, Defendants texted Plaintiffs that Defendants might be able to get various statistical information Plaintiffs requested, either via motion or otherwise, but that Plaintiffs should "keep moving" in the meantime.

34.     Defendants knew Plaintiffs had begun work and instructed Plaintiffs to continue their work on the Study and Report.

35.     On September 12, 2022, Plaintiffs informed Defendants via text that Plaintiffs had gathered quotes on data needed to supplement the relevant data Plaintiffs already owned or had access to and that Plaintiffs would be charged $6,000 to procure this supplemental data.

36.     On the same date, Plaintiffs advised Defendants that estimated costs of the dialer, telecom, SMS service and Plaintiffs' time were still being calculated, to which Defendants replied, "We're good."

37.     On September 16, 2022, Plaintiffs updated Defendants via text that the supplemental data had been procured and that contact for the polling phase of the Follow-on Study would commence, to which Defendants replied, "We're good, my friend."

38.     From September 16, 2022, through September 21, 2022, Plaintiffs prepared the data in each of four test areas and designed random selection processes that replicated the jury wheel creation and selection for summoning in each federal district test area.

39.     Plaintiffs also programmed the logical flow of the interactive voice response (IVR) interview into the dialing platform, integrated online survey tools, created dialing and messaging rules, recorded audio files, and loaded data into the platforms.

40.     On September 21, 2022, Plaintiffs were able to estimate the various expenses that would be incurred in conducting the Follow-on Study. Plaintiffs emailed a detailed breakdown of the $30,000 Plaintiffs had agreed to accept for conducting the Follow-on Study and issuing the non-exclusive license to Defendants to use Plaintiffs' written Report, wherein Plaintiffs would communicate the findings, provide visualizations to help others understand the findings and provide Plaintiffs' expert interpretation of the findings of the Follow-on Study.

41.     Plaintiffs also delivered an invoice to Defendants as an attachment to the September 21, 2022, email.  See Ex. A (Invoice dated September 21, 2022).  Defendants thanked Plaintiffs for the email shortly thereafter via text message.

42.     Combining the exchange of emails, course of performance by the parties, and confirmed in the "MOTION FOR 10-DAY EXTENSION TO UPDATE DISTRICT OF COLUMBIA JURY PREJUDICE DATA FOR MOTION TO CHANGE VENUE" in Case No. 21-cr-125-TJK (Dkt. 470) (hereafter "Motion for Extension"), provides the basis for the agreement between Plaintiffs and Defendants.

43.     Plaintiffs explained in the detailed breakdown of cost emailed to Defendants on September 21, 2022, that the usual charge for polling like that conducted as part of the Follow-on Study is $2 per answer to each question.

44.     In response, Defendants requested - and Plaintiffs performed - four distinct polls, yielding 41,155 answers. The usual and customary cost of the polling component of the Follow-on Study is $82,310.

45.     Plaintiffs explained in the detailed breakdown of cost emailed to Defendants on September 21, 2022, that the usual charge at that time for Plaintiffs' cross-tabulation and comprehensive reporting is $175 per hour.

46.     Plaintiffs spent 101.25 hours performing tasks related to cross-tabulation and comprehensive reporting, including comparing the results from each test area to each other and to previous results in two of the areas, as Defendants had requested. The usual and customary charge for the cross-tabulation and comprehensive reporting of the Follow-on Study is $17,778.

47.     The total usual and customary charge for the Follow-on Study and comprehensive Report is $100,088.

48.     Plaintiffs agreed to perform the Follow-on Study, cross-tabulation and comprehensive reporting, and to issue a non-exclusive license for a copy of the Report Plaintiffs would author for a total of $30,000 because that was the maximum budget pre-approved by Defendants without the need for further consideration, because the limited duration of the project meant that costs would not need to be carried for an extended time period before payment was received, and because Plaintiffs had a reasonable belief that their work would be useful to Plaintiffs on future projects.

49.     At no point did Plaintiffs agree to the Report on a contingency basis that payment would come through the Court.  It was always Plaintiffs' reasonably expectation that Defendants were responsible for payment for the Study and Report, regardless of where the funding was obtained.

50.     Plaintiffs had become recognized as leading experts on the question of community attitude toward participants in the January 6, 2021, events at the U.S. Capitol and were likely to be asked to conduct further comparative or time-interval analysis. In other words, there was likely value in the future use of Plaintiffs' work-product, so Plaintiffs agreed to accept the $30,000 offered by Defendants.

51.     On September 21, 2022, calls for the polling phase of the Follow-on Study commenced, and costs associated with this phase were incurred by Plaintiffs.

52.     On September 22, 2022, Defendants asked Plaintiffs via text to send the original invoice via text, and Plaintiffs immediately complied.

53.     On September 23, 2022, Defendants requested via text message that Plaintiffs update the invoice or the detailed breakdown to include a list of the test areas Plaintiffs had selected for inclusion in the Follow-on Study. Defendants advised Plaintiffs that, "Judge needs to

see that." Plaintiffs immediately complied by sending the updated invoice via email to Defendants.

54.     On September 23, 2022, Plaintiffs advised Defendants that SMS and email polling was active and that costs associated with this phase had been incurred by Plaintiffs.

55.     On September 26, 2022, Defendants asked Plaintiffs via text message how the results were looking.

56.     Plaintiffs replied that they would process recent responses and provide Defendants with an interim measure, which Plaintiffs did subsequently deliver to Defendants by phone.

57.     On September 26, 2022, Defendants emailed Plaintiffs a question about one of test areas in anticipation of a conversation they expected to encounter. Plaintiffs replied and confirmed exactly which areas were included in the Follow-on Study.

58.     On September 27, 2022, Defendants called Plaintiffs to explain that Defendants may have found a way to have some or all of the costs of the Follow-on Study and Plaintiffs' anticipated Report paid for. Defendants asked if Plaintiffs would be willing to send any information needed for Defendants' application for funding. Plaintiffs agreed to send whatever Plaintiffs had available. Because Defendant Hull made the inquiry on behalf of all named Defendants but did not know what information would be required for their application, he added Defendant Hernandez to the call.

59.     On September 28, 2022, Defendant Hull texted Plaintiff Olson and asked her to call Defendant Hernandez. Defendant Hull explained that Defendant Hernandez was in trial that day, so Plaintiff Olson texted Defendant Hernandez to arrange a call. Defendant Hernandez did not reply.

60.     Early on September 29, 2022, Defendant Hull told Plaintiffs that he asked Defendant Hernandez to call Plaintiffs. Plaintiffs did not receive such a call from Defendant Hernandez.

61.     Plaintiffs advised Defendants on the initial September 10, 2022, phone call - and on multiple occasions after that time - that Plaintiffs do not generally create reports without prepayment. Plaintiffs explained that this requirement is important to ensure the financial security of Plaintiffs' businesses and to ensure that no inference of bias could be made due to Plaintiffs' position of vulnerability that could be created by Defendants owing an outstanding balance to Plaintiffs while Plaintiffs completed work that should be done objectively.

62.     In the evening of September 29, 2022, Plaintiffs notified Defendants via text message that Plaintiffs had completed another project and were now free to begin work on the report that would contain visualizations and express Plaintiffs' interpretation of the results and findings of the Follow-on Study.

63.     Plaintiffs were awaiting payment so that they could begin drafting the report and creating visualizations to embed in the report.

64.     Late on September 29, 2022, Defendants filed their Motion for Extension (Criminal Case No. 21-cr-125-TJK (Dkt. 470) in this District. The Motion for Extension confirms that all named Defendants (lawyers and law firms for the Five J6 Clients) agreed to the $30,000 cost of the Follow-on Study ("(Ms. Lindsay [Olson] is performing the work for a total fee of only $30,000…" Dkt. 470 at 3), confirming that $30,000 was a favorable cost for Defendants, and acknowledging that Plaintiffs had already completed around half of the research phase.   See Ex. B (Criminal Case No. 21-cr-125-TJK (Dkt. 470).

65.     The Motion for Extension explained the difficulty Defendants had encountered trying to locate a qualified vendor to complete the Follow-on Study due to the stigma and risks associated with the project and the Five J6 Clients.

66.     Notably, all Defendants joined this Motion to Extend on behalf of their Five J6 Clients, thereby acknowledging and communicating to the court the agreed $30,000 cost and the fact that Plaintiffs had already begun work on the Study.

67.     On September 29, 2022, Defendants emailed a copy of the Motion for Extension to Plaintiffs, along with a message stating, "And we're off … Dan :)". Plaintiffs replied that Plaintiffs would "get it done" by the new deadline. On September 30, 2022, Defendants responded "Great, thanks."

68.     Between September 29, 2022 and October 3, 2022, Defendants and Plaintiffs spoke multiple times about a possible funding source Defendants had discovered may be available to them to pay for Plaintiffs' work on the Follow-on Study and comprehensive Report and to pay Plaintiffs' hourly fee for testimony about the Follow-On Study, should the court request it. Defendants told Plaintiffs that they would notify Plaintiffs if the funding source required any information from Plaintiffs to facilitate the funding process. During this time, Plaintiffs continued to perform the research and polling phases but did not commence work on Report because payment had not been made. Plaintiffs reminded Defendants that Plaintiffs needed to avoid any appearance of bias when Plaintiffs drafted the Report.

69.     As the October 10, 2022, the deadline to file Plaintiffs' Report with Defendants' supplement to their Motion to transfer Venue approached, the likelihood that Plaintiffs could complete a report by the deadline decreased. This concerned Plaintiffs.

70.     On October 3, 2022, Defendant Hull emailed Plaintiffs that Defendant Hernandez was in trial but that he got a note from her to deliver to Plaintiffs. Defendant Hull then forwarded this note to Plaintiffs. In this note, Defendant Hernandez stated that she did not call Plaintiffs. She then listed what she needed from Plaintiffs to help Defendants with a funding application they were making with their court to cover Defendants' obligations for Plaintiffs' Study and Report.

71.     Defendant Hernandez also stated that, "The Court will not pay in advance."

72.     Plaintiffs immediately responded that "[Plaintiffs] have already advanced [$]9,500 in hard costs for data and platform costs, telecom, SMS and email sends," and asked "Should [Plaintiffs] stop?"

73.     Defendants, through Hull, immediately replied, "Nope. Keep going."

74.     On October 4, 2022, Defendant Hull advised Plaintiffs that the Court was in favor of ordering funding and had, in fact, suggested that Defendants seek such funding. Defendants stated that the funds would need to be paid directly to Plaintiffs and could not be paid as a reimbursement to Defendants. This meant, Defendants explained, that Plaintiffs would need to complete the project before being paid but that, because this is the Court's own policy not to make any prepayments with this type of funding, no appearance of bias would result.

75.     Defendants also informed that if Plaintiffs would not complete the project, Defendants' Five J6 Clients would be prejudiced and suggested that Plaintiffs would be to blame. Finally, Defendants stated that Defendants would have little motivation to pay Plaintiffs anything if Plaintiffs had prejudiced their Five J6 Clients by not completing the work by the deadline.

76.     In any event, Plaintiffs began work on the comprehensive Report, creating the templates, layout and design and running various calculations, comparisons, and inquiries of interest on the interim results.

77.     On October 5, 2022, Defendant Hernandez emailed Plaintiffs and Defendant Hull the following:

> In order to get funding for the research you are doing for a Change of Venue motion, which you have discussed with Dan, I only need the following information:
> - The total amount that you expect to charge for your work;
> - Your hourly rate;
> - Your CV or resume.

> The sooner I get this information the sooner I can get the necessary funding.

78.      On October 5, 2022, Defendant Hull texted Plaintiffs, "We need you."

79.     Between October 5, 2022, and October 7, 2022, Plaintiffs called Defendant Hull to advise Defendants that Plaintiffs had already provided the items Defendant Hernandez listed in the October 5, 2022, email and that Defendant Hull had already confirmed this to Plaintiffs. Defendants advised that they did not want Plaintiffs to take time away from the project to update Plaintiffs' CV and that they could, instead, use Plaintiff Olson's LinkedIn page and reference one of Plaintiffs' previous reports, which had been filed in another federal case on the same topic. Defendants confirmed they had all that was needed and advised Plaintiffs that Defendant Hernandez would have an answer from the court by Monday, October 10, 2022.

80.     On October 7, 2022, Plaintiffs texted Defendants an update on the status of the many complex tasks Plaintiffs were charged with completing, to which Defendants replied, "Please hang in there with us."

81.     On October 8, 2022, Plaintiffs texted Defendants to request a complete list of Five J6 Client names and a complete list of attorneys who had engaged Plaintiffs so that Plaintiffs could include that information in the comprehensive report. **Defendants replied, "All of them."**

82.     Up to this point, no Defendant named herein objected to being responsible for Study and Report while each Defendant made clear that they would be using the Study and Report in support of their respective client's defenses in the criminal trials.

83.     On October 10, 2022, Plaintiffs contacted Defendants by text to ask if a defendant Donohoe is still in the trial group. Plaintiffs did not recognize the name "Donohoe" or his attorneys' names from the multiple conversations that had taken place regarding the Follow-on Study and Report but found his name on the court docket. Defendants replied that Donohoe was no longer part of their group. Defendants also replied that, "There are five [J6 Defendants]. Group is Biggs, Nordean, Rehl, Tarrio and Pezzola," and that, "**Lawyers are respectively J. Dan Hull of Hull McGuire PC, Nicholas and David Smith, Carmen Hernandez, Nayib Hassan and Steven Metcalf of Metcalf & Metcalf."** Each of those lawyers and their respective law firms are named herein as Defendants liable to Plaintiffs.

84.     On October 10, 2022, Plaintiffs delivered to Defendants Plaintiffs' Report, which included various custom designs and visualizations, tables, figures and copy. Attached as Ex. C. The Report is a creative work that was authored by Plaintiff Olson and contains explanation of scientific details to the reader in an understandable, compelling and memorable way. Without Plaintiffs' expertise, skill and creativity, the report could not have been created. Further, identical raw data from the Follow-on Study could have been expressed in infinitely different ways, and no two authors would create the exact same report. The Report is the expression of Plaintiffs' understanding and interpretation of the raw data, making it copyrightable.

85.     On October 10, 2022, Defendants each copied, distributed and published Plaintiffs Report by filing it in Case No. 21-cr-125-TJK, which is pending in the Federal District for the District of Columbia.

86.     Multiple other defendants charged with crimes related to the events of January 6, 2021, and multiple media outlets have used and republished Plaintiffs' Report due to Defendants' misconduct, causing downstream infringers. Defendants continue to use Plaintiffs' work for a commercial purpose by using it in the course of representing their clients without ever paying for the Follow-on Study or non-exclusive license to the Report as agreed.

87.     The Motion to Extend was related to a Motion to Change Venue filed on May 5th, 2022, by Defendant Tarrio and joined by the remaining Defendants (lawyers and law firms) on behalf of the Five J6 Clients. Plaintiffs' Report was used by Defendants to supplement this earlier Motion to Change Venue.

88.     Plaintiffs explained in the September 21, 2022, email to Defendants that a significant portion of the discounted cost Plaintiffs agreed to accept would be used to cover data acquisition and telecom expenses. These expenses remain unpaid, and Plaintiffs have lost access to services necessary and vital services to perform work on other projects.

89.     Defendants filed a Motion to Extend in the J6 criminal cases that identified Plaintiffs and the scope of work, cost and good value of their agreement with Plaintiffs.

90.     Defendants filed a Motion to Transfer Venue in the J6 criminal cases, which relied heavily on Plaintiffs' Follow-on Study and Report.

91.     Plaintiffs conducted the Follow-on Study and created a Report as agreed. Defendants have not paid Plaintiffs as agreed.

92.     Defendants were fully aware of the discounted cost and actual fair market value of Plaintiffs' Study and non-exclusive license to Plaintiffs' Report. Plaintiffs relied on Defendants' promise to pay in performing the work. Defendants requested and took possession of Plaintiffs' work. Defendants also published Plaintiffs' Report, which is registered with the U.S. Copyright office, without ever paying for a license.

93.     On or about November 1, 2022, Plaintiffs sent Defendants notice that they had not paid for Plaintiffs' Report and that payment was required to avoid legal action.

94.     On November 9, 2022, the court makes numerous references to the October 10, 2022 Report (Dkt. 477, 477-1). See *US. v. Nordean et. al.* 1:21-cr-00175-TJK, Dkt. 531 at 2, 6, 7, and 11.

95.     Additionally, Plaintiffs have suffered – and continue to suffer - damages related to their vendors not being paid. Plaintiffs rely on the services of these vendors for their research and consulting businesses. The interruption of these services has caused additional loss of income reasonably calculated to be at least $100,000 thus far, subject to proof at trial.

96.     Defendants received the benefit of the Follow-on Study and Report without paying for them, and, because no payment was made as agreed for non-exclusive license to a copy of the Report, Defendants have been infringing Plaintiff Olson's copyright in the Report.

97.     On December 8, 2022, Plaintiffs sent a Cease-and-Desist email through their counsel, demanding that each Defendant take down and immediately cease all use(s) of Plaintiffs' Follow-on Study and Report. Plaintiffs notified Defendants that the contingency for Plaintiffs to grant permission or authorization for Defendants to use the Follow-on Study and copyrighted Report had not been met, and, therefore, none of the Defendants had permission or

authorization to use the Follow-on Study or Report or to continue using the Follow-on Study or Report in any court filings, or otherwise.

98.     On February 17, 2023, Plaintiffs again sent a takedown notice and demand for payment based on copyright infringement damages suffered by Plaintiffs.  To date, no Defendant named herein has made any efforts to take down the report or compensate Plaintiffs, demonstrating intentional and willful copyright infringement of Plaintiff's Report without any valid legal defense.

99.     To date, Defendants, all of which are licensed attorneys and their respective law firms, have willfully disregarded Plaintiffs' demands to cease using the Follow-on Study and continue to pirate the copyrighted Report.

100.     Defendants are jointly and severally liable for statutory damages of up to $150,000, plus attorneys' fees and costs as the prevailing party.

## V. ALLEGATIONS

### COUNT 1: COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101 *ET. SEQ.*

### (Against All Defendants)

101.     Plaintiffs incorporates herein by this reference each and every allegation contained in each paragraph above.

102.     Plaintiff Olson owns a valid and subsisting copyright registration in the October 10, 2022 Report she created.  See Ex. C (Report titled "Multi-district comparative study on Community Attitude survey dated October 10, 2022"). Less than three months from the creation and first publication date of the October 10, 2022 Report, Plaintiff Olson registered the Report with the US Copyright Office on December 8, 2022, with the US Copyright Office issuing a registration number TX0009206915.  See 17 U.S. Code § 412.

103.    Having not been paid, Plaintiffs withdrew authorization for Defendants or their partners, agents, licensees, affiliates, attorneys, or J6 Clients to use, copy, file in court, publicly display, distribute, or otherwise commercially exploit the copyrighted Report.

104.    By failing to pay for the Follow-on Study or Report, Defendants had no right to use the Follow-on Study and Report for their clients in past court filings, nor do they have the right to use the Follow-on Study or Report in the future, including on any appeal that may be filed on behalf of the Five J6 Clients.

105.    Defendants have directly infringed Olson's copyright in the Report by using, copying, filing in court, publicly displaying, distributing, or otherwise commercially exploiting Olson's Report and without Olson's authorization and with actual notice of Olson's copyright claims.

106.    Defendants' infringements were willful and intentional and continue to be so despite being put on notice of such infringements.

107.    Defendants intentionally and willfully infringed Olson's copyrights in Olson's Report by continuing to use, copy, file in court, distribute, publicly display, and otherwise commercially exploit Olson's Report in the scope of their professional representation of the Five J6 Clients. Knowing that they had failed to make payment for authorization to do so, Defendants continue to use, copy, file in court, distribute, publicly display, and otherwise commercially exploit Olson's Report. Even after Plaintiff Olson notified Defendants that the contingent authorization for them to use the Report had failed and had been revoked, each Defendant intentionally and willfully infringed Olson's copyrights in Olson's Report with actual knowledge that the payment for authorization was never received, and that Olson's offer for such authorization had been revoked. Each Defendant intentionally and willfully infringed and

continues to infringe Olson's copyrights in Olson's Report with actual notice of Olson's copyright claims.

108.    Defendants directly benefitted financially from copyright infringement of the Report.

109.    Defendants had actual knowledge of each other's infringements of Olson's Report, and each materially contributed to the other's infringement of Olson's Report, as alleged above, with each Defendant joining in various motion and oral arguments before courts in this District that used the Report.

110.    Defendants are each secondarily liable for their respective employees, contractors, and agents' infringement when Olson's Report was filed in Court for their Five J6 Clients without paying to secure a license to use Olson's Report.

111.    Plaintiff Olson has suffered actual harm and reputational harm and has incurred significant costs as a direct and proximate result of Defendants' direct and secondary infringement.

112.    Pursuant to 17 U.S.C. § 504(c)(2), as a result of Defendants' infringement of Olson's exclusive rights in Olson's Report, Olson is entitled to recover statutory damages up to a maximum amount of $150,000 with respect to Olson's Report which is a Registered Work that was registered on December 8, 2022, pursuant to 17 U.S.C. § 504(c)(1) or within three months of infringement, for which Defendants are jointly and severally liable.

113.    Alternatively, at Olson's election prior to entry of final judgment, Olson is entitled to recover damages based on her actual damages suffered as a result of Defendants' infringements and the disgorgement of Defendants' profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial.

114.    Olson is entitled to her costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

115.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Olson, unless enjoined by this Court.

116.    Olson has no adequate remedy at law and pursuant to 17 U.S.C. § 502. Olson is entitled to a permanent injunction prohibiting infringement of Olson's exclusive copyrights in Olson's Copyrighted Report (Ex. C) by Defendants and all persons acting in concert with the Defendants, including their Five J6 Clients.

## COUNT 2: BREACH OF CONTRACT

### (Against All Defendants)

117.    Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

118.    Plaintiffs have performed each and every obligation for conduct the Study and author the Report and as required in the September invoice attached the September 21, 2022 email from Olson to Defendant Hull (Ex. A), confirmed in Ex. B (Motion for Extension) further corroborated by the filing of the Report (Ex. C) on October 10, 2022. See District case 1:21-cr-00175-TJK, Doc. 477-1. See also the Court's November 10, 2022 order denying the motion to transfer at *US. v. Nordean et. al*. 1:21-cr-00175-TJK, Dkt. 531 at 2, 6, 7, and 11.

119.    Defendants have materially breached the agreement by refusing to pay Plaintiffs the $30,000 owed for the Follow-on Study and non-exclusive license to Plaintiffs' Report.

120.    As a direct and proximate result of Defendants' material breach of the agreement, Plaintiffs have incurred economic damages in an amount to be proven at trial.

121.    As a result of Defendants' material breach of the agreement, Plaintiffs have sustained damages in excess of the jurisdictional minimum of this Court as noted above.

122.    As a further direct and proximate result of Defendants' willful material breach of the agreement, Plaintiffs further seek recovery of all other incidental, consequential, or compensatory damages arising from said breaches of the agreement in an amount to be proven at trial.

123.    Plaintiffs seek pre-judgment interest at the maximum legal rate, from the date of breach until the time of trial.

## COUNT 3: INTENTIONAL MISREPRESENTATION/FRAUD

### (Against All Defendants)

124.    Plaintiffs refer to and re-plead each and every allegation contained in the foregoing paragraphs of this Complaint and by this reference incorporates the same as if fully set forth herein.

125.    As is specifically pleaded in the factual allegations and incorporated here, Plaintiffs plead "how, when, where, to whom, and by what means the [fraudulent] representations were tendered." For avoidance of doubt, Plaintiff summarizes the facts for the allegations the fraudulent conduct is as follows.

126.    Plaintiffs claim that Defendants, through Defendant Hull speaking on behalf and authorized by all other Defendants, made false representations that harmed Plaintiff as described herein and Defendants continue to benefit from the fraudulent conduct.

127.    Plaintiffs alleges that Defendant Hull represented to Plaintiffs that if Plaintiffs would conduct the Follow-on Study and author the Report that Defendants intended to

compensate Plaintiffs for conducting the Follow-on Study and for license to use Plaintiffs' Report.

128.    Defendant Hull's representations were false (as outlined above and throughout this complaint); he knew that his representations were false when he made them, and/or he made the representation recklessly and without regard for their truth.

129.    All Defendants intended that Plaintiffs rely on the above representations by Hull, which Plaintiffs did, and such reliance caused harm to Plaintiffs.

130.    Plaintiffs' reliance on Defendants' representations were a substantial factor in causing Plaintiffs harm, as alleged herein, with losses of over $100,000 from the Follow-on Study and losses related to business Plaintiffs were unable to perform due to unpaid vendors.

131.    Defendant Hull's conduct and/or ratification by all Defendants of such conduct was a substantial factor in causing damages to Plaintiffs in an amount to be determined at trial and which meets or exceeds the jurisdictional limits of this court.

### COUNT 4: PROMISSORY FRAUD

### (Against all Defendants)

132.    Plaintiffs refer to and re-plead each and every allegation contained in the foregoing paragraphs of this Complaint and by this reference incorporates the same as if fully set forth herein.

133.    As is specifically plead in the factual allegations and incorporated here, Plaintiffs has also pleaded the "how, when, where, to whom, and by what means the [fraudulent] representations were tendered" against Plaintiffs.  For avoidance of doubt, Plaintiffs summarize some of the key factual allegation for their promissory fraud allegations.

134.     Defendant Hull made promises to Plaintiffs, including that payment would occur for the completion of the Follow-on Study and written Report, which was used and embraced by all Defendants in numerous court filings without ever paying Plaintiffs.

135.     Despite making these promises that were implied with various emails, text messages, phone and confirmed in court filings (See for example District case 1:21-cr-00175-TJK, Doc. Nos. 470 and 477-1), Defendant Hull made promises regarding the payment for the Follow-on Study and Report and knew those promises were critical for Plaintiffs to agree to conduct the Follow-on Study and Report (and incur significant expenses with Plaintiffs' vendors) and for Plaintiffs' to accept reputational and other risks for working on a controversial subject matter.

136.     At all relevant times herein, Defendants intended that Plaintiffs rely on the promises.

137.     Plaintiffs reasonably relied on the promises when they agreed to conduct the Follow-on Study and author the Report with the expectation to be paid.

138.     Defendants did not perform the promises of payment to Plaintiffs as promised.

139.     Plaintiffs were harmed by Defendants broken promises and Defendants' ratification of the broken promises in an amount to be determined at trial, plus exemplary damages, and attorney's fees to be determined at trial.

140.     Plaintiffs' reliance on Defendant's promises were a substantial factor in causing harm to Plaintiffs.

141.     Plaintiffs allege that Defendants engaged in promissory fraud on or about September 10, 2022, September 21, 2022 and up to the point of filing of the Report on October 10, 2022, otherwise known as promissory estoppel, when they promised to pay Plaintiffs for the

Follow-on Study and authorization to use the Report, yet Defendants never intended to fulfill the promise after the Follow-on Study was conducted and the Report authored.

142.     There was a reasonable expectation by the promisor, Defendants, that the promises would induce reliance by the promisee, Plaintiffs, to act by agreeing to work on the Follow-on Study, author the Report and deliver the Report to Defendants so that they could benefit from Plaintiffs' work by filing it in Court for the relief sought - without ever actually paying Plaintiffs, all the while threatening that without the Report, the Five J6 Clients would suffer prejudice from an allegedly biased DC jury pool.

143.     Plaintiffs actually did rely on the promises to act in agreeing to perform the work Defendants sought with the expectation that payment would be honored.

144.     Plaintiffs seek relief from this injustice by enforcing the promises Defendants made to them and Defendants' ratification of Hull's fraudulent conduct.

145.     Defendants' conduct was a substantial factor in causing damages to Plaintiffs in an amount to be determined at trial and which meets or exceeds the jurisdictional limits of this court.

## COUNT 5: UNJUST ENRICHMENT

### (Against All Defendants)

146.     Plaintiffs refer to and re-plead each and every allegation contained in the foregoing paragraphs of this Complaint and by this reference incorporates the same as if fully set forth herein.

147.     Plaintiffs conferred a benefit on Defendants by performing the Follow-on Study and authoring the Report.

148.    Defendants retained the benefit of the Follow-on Study Report, using it in court filings to seek relief related to motion for transferring the venue for their Five J6 Clients and with pending appeals.

149.    Defendants' retention of the benefit of the Follow-on Study and Report is unjust.

150.    Based on the unjust benefit, Defendants' conduct was a substantial factor in causing damages to Plaintiffs in an amount to be determined at trial and which meets or exceeds the jurisdictional limits of this court.

## VI. JURY TRIAL DEMANDED

151.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully demand a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

152.    WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on their behalf adjudging and decreeing that:

A.    That an Order be entered against Defendants for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq. by infringing Plaintiff Olson's copyright in her registered Report;

B.    That an Order be entered against Defendants in favor of Plaintiff Olson for such actual damages as Plaintiff Olson has sustained as a result of Defendants' infringement of Plaintiff's copyright;

C.    That an Order be entered granting injunctive relief against Defendants pursuant to 17 U.S.C. § 502 preventing and restraining infringement of Plaintiff's copyrights by Ordering Defendants, their agents, or anyone working for, in concert with, or on their behalf not to use, publish, publicly display, distribute, or in any way disseminate Plaintiff's copyrighted work

D.      That an Order be entered compelling Defendants to account for and/or disgorge all gains, profits, and advantages derived by Defendants by their infringement of Plaintiff's copyright or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq.;

E.      That an Order be entered against Defendants pursuant to 17 U.S.C. § 504 awarding statutory damages for each infringement of Plaintiff's Report that was registered with the US Copyright Office;

F.      That an Order be entered requiring Defendants to pay Plaintiffs' costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505;

G.      For Plaintiffs to be awarded Plaintiffs' actual damages, exemplary damages, and incidental damages related to Defendants' failure to pay for the Follow-on Study, license for the Report, and resultant damages caused to Plaintiffs' and their vendors;

H.      For damages to be awarded for breach of contract, fraud, promissory fraud and/or unjust enrichment for the Study and/or Report;

I.      For punitive damages for Defendants' willful conduct related to the fraud and promissory fraud committed;

J.      For Plaintiffs to be awarded pre-judgment interest from the time of the breaches and fraudulent conduct, and

K.      For such other and further relief as the Court may deem just and proper.

Dated: February 24, 2023

                                                  Respectfully submitted,

                                                  JAMES H. BARTOLOMEI, III P.A.

                                                  By: */s/ James H. Bartolomei*
                                                  James Bartolomei Esq.
                                                  Of Counsel at Duncan Firm, P.A.
                                                  809 W. 3rd Street
                                                  Little Rock, Arkansas 72201
                                                  501-228-7600 phone
                                                  501-228-0415 fax
                                                  james@duncanfirm.com
                                                  District Bar Number AR0007

                                                  *Attorneys for Plaintiffs*