## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN LUX RESEARCH,
LINDSAY OLSON
　　　　v.

　　　　　　　　　*Plaintiffs*,

HULL MCGUIRE PC, et al.,

　　　　　　　　　*Defendants*.

Civil Action No. 23-cv-523-JEB

### MOTION TO DISMISS THE FIRST AMENDED COMPLAINT'S CLAIMS AGAINST THE SMITH DEFENDANTS

Defendants David B. Smith PLLC, David B. Smith, and Nicholas D. Smith (the "Smith Defendants") move the Court to dismiss claims made against them in Plaintiffs' "First Amended Complaint for Copyright Infringement" (the "Amended Complaint"). ECF 27. While Plaintiffs may have a breach-of-contract case against Hull McGuire PC and attorney John Daniel Hull (the "Hull Defendants"), their claims against the Smith Defendants are unsupported by well-pleaded factual allegations. Fed. R. Civ. P. 12(b)(6). Worse, Plaintiffs and their counsel made no factual inquiry with the Smith Defendants before filing the Amended Complaint to determine whether, inter alia, the Hull Defendants had authority to bind the Smith Defendants to a contract with Plaintiffs. Plaintiffs' allegations are further belied by the public docket in *United States v. Nordean*, *et al.*, 21-cr-175-TJK. Absurdly, the Amended Complaint demands that the Court treat the Hull Defendants' representations to Plaintiffs as both fraudulent and truthful. Plaintiffs' claims against the Smith Defendants are abusive. They should be dismissed.

## I.      Background

### A.      Plaintiffs' original Complaint is dismissed

Plaintiffs, In Lux Research and Lindsay Olson, allege they contracted with the Hull Defendants to conduct polling of the jury pool for use in *United States v. Nordean*, *et al.*, 21-cr-175-TJK.  Am. Compl., ¶¶ 26-28.  Daniel Hull represented defendant Joseph Biggs in *Nordean*; the Smith Defendants represented Ethan Nordean, as court-appointed counsel.  *Nordean*, *et al.*, 21-cr-175-TJK.  At bottom, Plaintiffs allege that the Hull Defendants failed to pay them for their polling work.  Plaintiffs do not allege a joint defense agreement among Biggs and Nordean (and there was none) or that the Hull Defendants and Smith Defendants are professionally associated in any way.  They filed their Complaint against nearly all the defense lawyers in *Nordean* in the middle of the five-month criminal trial in that matter.  ECF 1.

On May 22, 2023, the Smith Defendants moved to dismiss the Complaint's claims against them.  ECF 21.  On June 7, the Court granted the motion pursuant to Local Civil Rule 7(b), as Plaintiffs did not respond to the motion within 14 days.  6/7/2023 Minute Order.

On June 12, Plaintiffs sought relief from the Court's June 7 Order, explaining that they had "inadvertently and with excusable neglect failed to observe this Court's Local Rule 7(b) regarding responding to motions to dismiss within 14 days (instead of the 21 days allowed under Fed. R. Civ. P. 15(a)(1)(B))." ECF 27, p. 2.

On June 13, the Court entered an Order directing that "per the Federal Rules of Civil Procedure, Plaintiffs are entitled to file an Amended Complaint within 21 days of a Motion to Dismiss.  If they do so, the Court will vacate the dismissals." 6/13/2023 Minute Order.  The same day, Plaintiffs filed their Amended Complaint.  ECF 27.  However, that pleading was not

filed within 21 days of the Smith Defendants' Motion to Dismiss but rather was filed 22 days after the motion.  *Compare* ECF 21 *with* ECF 27.[1]

### B.      Plaintiffs' Amended Complaint

Plaintiffs' original Complaint referenced the Smith Defendants one time in 152 paragraphs.  Compl., ¶ 83.  The Amended Complaint adds two new paragraphs concerning the Smith Defendants.  Am. Compl., ¶¶ 57, 98.  The amended pleading remains the same as the original in all other respects vis-à-vis the Smith Defendants.  *See* Redline Comparison Original/Amended Complaints, Exh. 5.  Accordingly, this motion will largely recapitulate the bases for dismissal outlined in the Smith Defendants' first Motion to Dismiss.  ECF 21.

Plaintiffs bring the following claims against every defense lawyer involved in *Nordean*: Copyright infringement (Count 1); Breach of contract (Count 2); and Unjust enrichment (Count 5).  They bring fraud claims against the Hull Defendants alone (Counts 3 and 4).  Plaintiffs' factual claims are simply summarized

### 1.      Hull/Olson communications

Beginning in late August 2022, attorney Daniel Hull began contacting Plaintiff Lindsay Olson, who, together with her LLC, "had become recognized as leading experts on the question of community attitudes toward participants in the January 6, 2021, events at the U.S. Capitol. . ." Am. Compl., ¶ 52.  Between August and September 2022, Hull and Olson exchanged emails, text messages and held phone calls with a view to Olson "conducting a Multi-district Comparative Community Attitude Follow-on Study and written report, to supplement Plaintiffs' earlier testing for potential bias in the jury pool of the Federal District for the District of

---

[1] The Court should dismiss the Amended Complaint's claims against the Smith Defendants for this reason alone.

Columbia and for Defendants to use in support of a motion to transfer venue for the J6 Defendants." *Id.*, ¶ 26.

In that period of time, Hull (whom Plaintiffs accuse of fraud) repeatedly informed Olson that he was speaking on behalf of all the defense counsel in *Nordean*. Am. Compl., ¶¶ 27-43. In one such Hull/Olson communication, Plaintiffs allege that they "agreed to accept the $30,0000 Hull offered on behalf of himself and all other Defendants to complete the Follow-on Study (the 'Follow-on Study') and author a written report (the 'Report') detailing the findings and comparing these new findings to those of an earlier study Plaintiffs had performed on the same subject matter and which Hull represented was necessary given the January 6 Congressional committee hearings occurring throughout the summer of 2022." *Id.*, ¶ 32.

However, the Amended Complaint does not allege that Plaintiffs ever communicated with the Smith Defendants. It does not allege that the Smith Defendants themselves agreed to enter into a contract with Plaintiffs for jury pool polling analysis or for anything else. It does not allege that Plaintiffs ever communicated with the Smith Defendants about the alleged contract. Instead, it alleges that Hull alone informed Plaintiffs that the Smith Defendants were among a group of attorneys that would "use" Plaintiffs' work product. Am. Compl., ¶ 89.[2] The Amended

---

[2] Despite the fact that Plaintiffs and the Smith Defendants have concededly never communicated with one another, the entire body of the original Complaint repeatedly implied that all of Plaintiffs' communications with Hull included the Smith Defendants. *E.g.*, Compl., ¶ 34 ("**Defendants** knew Plaintiffs had begun work and instructed Plaintiffs to continue their work on the Study and Report.") (emboldening added); ¶ 35 ("On September 12, 2022, Plaintiffs informed **Defendants** via text that Plaintiffs had gathered quotes . . . and that Plaintiffs would be charged $6,000 to procure this supplemental data." ) (emboldening added); ¶ 37 ("On September 16, 2022, Plaintiffs updated **Defendants** via text that the supplemental data had been procured and that contact for the polling phase of the Follow-On Study would commence, to which **Defendants** replied, 'We're good, my friend.'") (emboldening added). The Amended Complaint edited out these plural references to Olson's nonexistent communications with "Defendants," a concession that these allegations were a misleading representation to the Court.

Complaint does not allege that the Smith Defendants received, or heard about, any of the alleged communications between Daniel Hull and Plaintiffs or that the Smith Defendants participated in or received any other communication referenced in the Complaint.[3]  The Amended Complaint alleges no facts showing that: (1) Hull, an attorney in the Hull McGuire PC firm, stood in an agent/principal relationship with the Smith Defendants, attorneys in the David B Smith PLLC firm; (2) Hull possessed actual authority to contract for the Smith Defendants; (3) the Smith Defendants engaged in expressive conduct toward Plaintiffs manifesting that Hull acted with apparent authority to bind the Smith Defendants.

The first new reference in the Amended Complaint to the Smith Defendants is an email from Daniel Hull on September 25, 2022, copying the *Nordean* defense lawyers including the Smith Defendants.  Am. Compl., ¶ 57.  There, Hull directs the attention of the lawyers to a September 21, 2022 email from Olson in which she offers to conduct polling analysis for a fee of $30,000.  Hull comments, "I'm impressed with her.  I like the quote.  And she's already working at [sic].  But I'll need everyone's help getting $ for this.  Nick and Carmen especially." *Id.* Plaintiffs do not allege that the Smith Defendants ever responded to Hull's September 25 communication.  Nor does the Amended Complain explain why, if Hull had been "speaking on behalf of all Defendants" in the Hull/Olson communications alleged in paragraphs 26 through 56, Hull would later be asking for "everyone's help getting $" and tentatively opining that he "like[s] the quote" on September 25—*following* the Hull/Olson communications in which the Amended Complaint alleges that Hull contracted "on behalf of all Defendants."

---

[3] Incidentally, the Smith Defendants neither saw nor received nor heard about any of Daniel Hull's communications with Plaintiffs until they reviewed the Complaint.

2.       **Court filings in** *Nordean*

Aside from communications between Hull and Plaintiffs, the Amended Complaint makes

allegations about the Smith Defendants' court filings in *Nordean*.  In doing so, it attempts to

allege both that the Smith Defendants indirectly accepted the terms of the Hull/Olson agreement

or, in any case, used Plaintiffs' copyrighted work product without compensating them.

Plaintiffs' allegations about the Smith Defendants' filings in *Nordean* are grossly misleading.[4]

Enrique Tarrio, a *Nordean* defendant, filed a motion to transfer venue on May 2, 2022.

*Nordean*, 21-cr-175-TJK, ECF 349.  As the Court can see from the docket and the face of the

Amended Complaint, this motion was filed months before Plaintiffs were contacted by attorney

Daniel Hull and thus did not use Olson's work product in any way.  Am. Compl., ¶ 26.  While

Plaintiffs' original Complaint disclosed Tarrio's May 2022 venue-transfer motion, Compl., ¶ 87,

that reference has been omitted from the Amended Complaint.  As the Court will notice from the

*Nordean* docket, defendant Nordean (client of the Smith Defendants) filed a motion to join

*defendant Tarrio's original transfer motion filed in May 2022, which made no reference to or*

*use of Plaintiffs' work*.  *Nordean*, 21-cr-175-TJK, ECF 471.[5]

Omitting Tarrio's motion, the Amended Complaint pleads that, on September 29, 2022,

> Hull, on behalf of all Defendants, filed their Motion for Extension (Criminal Case No. 21-cr-125-TJK (Dkt. 470) in this District to supplement [Tarrio's] Motion to Transfer Venue. The Motion for Extension confirms that all named Defendants (lawyers and law firms for the J6 Defendants) joined the Motion for Extension.

---

[4] At the motion-to-dismiss stage, the Court is not required to assume the truth of allegations contradicted by judicially noticeable facts, such as the nature of records publicly filed in a judicial proceeding. *E.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (considering content of documents on motion to dismiss where complaint relied on documents' terms and where documents were judicially noticeable).

[5] In Nordean's filing at ECF 471, he also specifically joined a supplement filed by defendant Biggs at ECF 406.  *Nordean*, 21-cr-175-TJK, ECF 471.  The Court will notice that Biggs' filing at ECF 406, filed on June 16, 2022, has nothing to do with Plaintiffs' work product and was filed before Hull's communications with Olson commenced.  *Id.*, ECF 406.

Am. Compl., ¶ 69.

> Adds the Amended Complaint,

> This is indisputable evidence that each Defendant agreed and gave Hull approval to file the Motion for Extension to supplement [Tarrio's] Motion to Transfer Venue with Plaintiffs' Follow-On Study and Report. Each Defendant named herein intended to use the Follow-On Study and Report for their clients benefit (the J6 Defendants), preserving the issue for appeal, if necessary.

Am. Compl., ¶ 69.

The Court will notice that this allegation is demonstrably false in several respects. First, the *Nordean* docket shows that Daniel Hull alone filed the extension motion at issue—not all the "Defendants." *Nordean*, 21-cr-175-TJK, ECF 470. Throughout the *Nordean* case, when defendants wished to join a co-defendant's motion, they would individually file joinder motions, *consistent with the Court's order that they do so. E.g.*, *Nordean*, 21-cr-175-TJK, 02/09/2022 Minute Order (ordering defense counsel to individually file a joinder motion for each defense motion a co-defendant wished to join); *see also* ECF 105, 175, 297, 303, 375, 383, 386, 410, 446, 447, 451, 466-69, 471, 501, 508 (same). As the public docket shows, the Smith Defendants never filed a motion to join Hull's "extension motion" that referenced Plaintiffs' work product and Plaintiffs do not allege otherwise. Thus, under the *Nordean* Court's order, defendant Nordean did not join—and could not have joined—Hull's extension motion at docket number 470.[6]

---

[6] The Amended Complaint adds, "[N]o Defendant ever objected to Hull filing this Motion for Extension on behalf of all Defendants." Am. Compl., ¶ 69; ¶ 100 (same). Plaintiffs have it backwards. The Smith Defendants were not required to "object" to Hull's extension motion as (1) as explained, the Court entered an order directing that the *Nordean* defendants could not join any motion by a co-defendant unless they filed an individual joinder motion, which Nordean demonstrably did not do with respect to ECF 470; (2) the Smith Defendants had no reason to interpose an objection to Hull's comments concerning Olson *because they were collateral to the purpose of the motion* which was merely to extend the briefing deadlines—for a motion that Nordean had not even filed. The law of contract did not demand that the Smith Defendants

Next, the Amended Complaint alleges that,

> On October 10, 2022, when Hull, with authority to file jointly on behalf of all
> Defendants, filed the supplement attaching a copy of the Plaintiff Olson's copyrighted
> Report without paying for it in Case No. 21-cr-125-TJK (pending in the Federal District
> for the District of Columbia), Defendants committed copyright infringement by each
> copying, distributing and publicly displaying Plaintiff Olson's Report without a legal
> defense.

Am. Compl., ¶ 91.

This allegation is shown to be false by reference to judicially noticeable records. *Myers*,

367 F.3d at 965. The Court will notice that, like the September 29 filing, the October 10 filing

was made by Hull alone. *Nordean*, 21-cr-175-TJK, ECF 477. The docket shows that Nordean—

and thus the Smith Defendants—never joined the October 10 filing that attaches Plaintiffs' work

product. *Id.* Indeed, in a subsequent minute order the *Nordean* Court explicitly noted that

defendant Biggs alone (through Daniel Hull) "submitted [Plaintiffs'] study to the Court to

supplement Defendant Tarrio's [venue transfer] motion." *Nordean*, 21-cr-175-TJK, 11/02/2022

Minute Order. And while the minute order notes that defendant Tarrio moved the Court to allow

testimony by Plaintiff Olson in support of Tarrio's motion to transfer venue, it pointedly omits

any mention of defendant Nordean—who was wholly uninvolved in venue-transfer arguments,

according to the docket itself and hearing transcript cited by Plaintiffs. *Id.*[7]

---

object in their personal capacity—and through their client's name—to a co-defendant's motion
against the speculative risk of a future third-party contract/copyright claim without any
precedential basis. The public docket does not show the Smith Defendants ever citing or using
Plaintiffs' work in *Nordean* and the Smith Defendants have informed Plaintiffs' counsel on
several occasions they have no intention of doing so in the trial and appellate courts.

[7] Without prejudicing their client's interests in any way, the Smith Defendants believed it was
wise to focus on pretrial issues beyond venue, such as whether the indictments stated offenses.
The Amended Complaint references one line from a government filing in *Nordean* which states
that Olson's work was "commissioned by the defendants in this case. . ." Am. Compl., ¶ 96
(citing *Nordean*, 21-cr-175-TJK, ECF 502). Of course, Plaintiffs do not allege that the

In the second new reference to the Smith Defendants in the Amended Complaint, Plaintiffs allege that during an October 28, 2022 hearing on Tarrio's venue transfer motion, the Smith Defendants denied that they "had anything to do with Plaintiff Olson's copyrighted report or that [they] owed any money for it." Am. Compl., ¶ 98.  Indeed, in contrast to other defense counsel, the Amended Complaint does not allege that the Smith Defendants referenced or made use of Plaintiffs' work product in any way during the October 28 hearing.  *Id.*

Finally, the Amended Complaint alleges that the *Nordean* court's November 9, 2022 order denying Tarrio's venue transfer motion somehow substantiates Plaintiffs' claim against the Smith Defendants.  Am. Compl., ¶ 101 (citing *Nordean*, 21-cr-175-TJK, ECF 531).  That is misleading.  As the Court will see, the *Nordean* order merely states that Tarrio's "four codefendants" joined *his* transfer motion (filed in May 2022), not that all the defendants retained Olson or used her work product, a question not before the court.  *Nordean*, 21-cr-175-TJK, ECF 531, p. 2.  As explained, the *Nordean* court had specifically stated in a prior minute order that Olson's report was submitted by Hull alone.  *Nordean*, 21-cr-175-TJK, 11/02/2022 Minute Order.

In sum, the Amended Complaint does not plead a single instance where defendant Nordean and the Smith Defendants copied, distributed, published or even made reference to Plaintiffs' Report and Follow-on Study.[8]

---

government was involved in contract negotiations between Hull and Olson and thus the government's mistaken view of the matter has no relevance in this case.

[8] In fact, the Smith Defendants have never even reviewed Plaintiffs' Report and Follow-on Study.  As the Court will see, the *Nordean* docket contains nearly 1,000 entries.  Dozens of pretrial motions were filed.  Nordean was not focused on venue transfer, the project of other defense counsel.

**C.      The Smith Defendants' communications with Plaintiffs and their counsel**

On October 27, 2022, Plaintiffs emailed all of the defense lawyers in *Nordean* and

demanded "$30,000 [to which Olson] is owed for her polling and survey work as well as the

report that was used in your filings." Exh. 1, 10/27/22 email from Patrick Krason.[9]   The

following day, the Smith Defendants replied as follows:

> Mr. Krason,
>
> I think you have not been given correct information.  The lawyers on this email represent
> different defendants.  I have never spoken to Ms. Olson and did not hire her for work.
>
> **Please feel free to give me a call about that if you have any questions.  You should
> not be representing in Court or anywhere else that I owe the debts you're referring
> to.**  Thank you.
>
> Nick Smith

Exh. 1, 10/28/22 email from Nick Smith (emboldening added).

> On behalf of Plaintiff Olson, her agent replied as follows:
>
> Hi Mr. Smith, thank you for replying. The information I was given was the emails and
> text messages from Mr. Hull that you all as a group, for you individual clients, hired Ms.
> Olson to do the survey work for the change of venue argument. You were included on
> many of those emails including one on 10/26 from Mr. Hull that references the need of
> the group to pay Ms. Olson's invoice. If you believe the information I have been given is
> incorrect or misleading please reply with your thoughts to this group.
>
> Thank you.
>
> Best regards,
> Patrick Krason on behalf of Lindsay Olson

Exh. 2, 10/28/22 email from Patrick Krason.

The Smith Defendants responded:

---

[9] The Amended Complaint specifically refers to Defendant Nick Smith's communications with
Plaintiffs' assistant, Krason, on October 28, 2022.  Am. Compl., ¶ 99.  Thus, they are
incorporated by reference and may be considered by the Court at the motion-to-dismiss stage
without converting the motion into a motion for summary judgment.  *Scott v. J.P. Morgan Chase
& Co.*, 296 F. Supp. 3d 98 (D.D.C. 2017).

Mr. Krason,

Again, I did not hire Ms. Olson.  I was not a part of the decision to hire Ms. Olson.  If you are implying that I owe Ms. Olson money merely because my email address was copied on one of the hundreds of emails I receive a day, let me suggest that your understanding of contract law may be mistaken.  I did not ratify a contract and become a debtor by being copied on an email.  If you represent in a court filing that I am a debtor, it will be false and possibly defamatory.

Thank you.

Nick Smith

Exh. 2, 10/28/22 email from Nick Smith.

Plaintiff Olson's agent responded:

Hello Mr. Smith,

Question please.  Did you sign onto the motion [in *Nordean*] where Ms. Olson's work product was used?  We were given a list of attorneys from Mr. Hull of the attorneys that were ordering the survey and joining the motion and you were on that list.  We are just trying to better understand how the agreement to hire Ms. Olson was decided between all the attorneys involved.  if you can shed some light on that, it would be appreciated.

Best regards,
Patrick Krason for Lindsay Olson

Exh. 3, 10/28/22 email from Patrick Krason.

The Smith Defendants replied as follows:

Mr. Krason,

Let me explain something. One defendant in this [*Nordean*] case filed a venue transfer motion.  That is defendant Enrique Tarrio.  The docket entry is ECF No. 349.  That filing has nothing to do with Ms. Olson's work product.  Ethan Nordean, the defendant I represent, joined the motion at docket entry 349.  That does not mean I owe Ms. Olson money.  There was no "group agreement" to hire Ms. Olson.  Please direct the dunning towards the individual or individuals who hired Ms. Olson. Thank you.

Exh. 3, 10/28/22 email from Nick Smith.

Plaintiff Olson's agent responded:

> Mr. Smith. Thank you for this information. **It seems Mr. Hull has dragged you into something you may or may not have agreed with through his representations to Ms. Olson**. I appreciate you taking the time to respond and clarify.

Exh. 3, 10/28/22 email from Patrick Krason (emboldening added).

The Smith Defendants responded:

> Mr. Krason:
>
> You say I have been dragged "into something you may or may not have agreed with." I will clarify the same point again: There is no "may." I am not a party to the contract you are referring to.

Exh. 3, 10/28/22 email from Nick Smith.

The Complaint does not allege that at any point between October 28, 2022 and the filing of the Complaint Plaintiffs or their counsel contacted the Smith Defendants, attempted to set up a phone call, or made any inquiry about whether they had authorized Daniel Hull to contract on their behalf.

The same day, on October 28, 2022, another *Nordean* defense lawyer noted to the Smith Defendants that Hull may have expected to receive CJA funds with which to reimburse Plaintiffs.  Exh. 4, 10/28/22 email to Nick Smith.  Defendant Nick Smith responded:

> **It's insane to sign a $30,000 contract without money and then expect CJA to cover it.  And it might detract from what court-appointed lawyers receive.  Hull shouldn't have promised that.**

Exh. 4 (emboldening added).

On February 23, 2023, Plaintiffs filed their 28-page Complaint against the Hull Defendants and other lawyers in the *Nordean* case.  ECF 1.  As Plaintiffs knew, the Defendants had been in trial in the *Nordean* case for several months.  Shortly thereafter, a news media outlet published a story reporting that the defense lawyers in *Nordean* had been sued for fraud.  *Proud Boys Lawyers Accused of Not Paying for Jury Bias Report*, Law360, Feb. 27, 2023, available at:

https://www.law360.com/pulse/articles/1580122/proud-boys-attys-accused-of-not-paying-for-jury-bias-report.

One day later, the Smith Defendants emailed Plaintiffs' counsel numerous times, asking for their good-faith basis for adding them to the Complaint and in particular for bringing fraud claims against the Smith Defendants.  Plaintiffs' counsel refused to provide facts that support fraud claims against the Smith Defendants.  Plaintiffs' counsel also refused to have a phone conversation with the Smith Defendants to discuss their alleged good-faith basis for Plaintiffs' claims against them.

On May 12, 2023, the Smith Defendants held a conference call with Plaintiffs' counsel. The Smith Defendants explained that they did not enter into an agreement with the Plaintiffs; that their email communications with the Plaintiffs and other defense counsel in *Nordean* established the point; and that there is no factual basis for claiming that the Hull Defendants had some authority to contract on behalf of the Smith Defendants.  The Smith Defendants noted their extremely busy work schedule and their desire to avoid the entirely unnecessary expense of drafting a motion to dismiss the Complaint's claims against the Smith Defendants.  The Smith Defendants offered to provide sworn declarations to Plaintiffs stating that attorney Daniel Hull had no authority to contract on behalf of the Smith Defendants and that Hull never communicated with the Smith Defendants about retaining Plaintiffs' services.  The Smith Defendants offered to make filings in *Nordean* noting they have made no use of Plaintiffs' services and disclaiming any reliance on their work product in that case.  Plaintiffs' counsel expressed no interest in that offer.

In response, Plaintiffs' counsel said they were inclined to agree to a 7-day extension of time for the Smith Defendants to file a response to their Complaint.  A couple of days later,

however, Plaintiffs' counsel changed their position and demanded that the Smith Defendants immediately respond to the Complaint.

## II.     Argument

### A.     Legal standard for a Rule 12 motion to dismiss a claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 344-45 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As indicated above, while a court is generally required to accept as true a plaintiff's factual allegations, that is not so where the allegations are contradicted by judicially noticeable facts.  *Myers*, 367 F.3d at 965.  Moreover, the Court need not accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  In addition, "[a] district court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are integral to one or more of the plaintiff's claims." *J.P. Morgan Chase & Co.*, 296 F. Supp. at 98.

### B.     Plaintiffs' copyright claim is nonsensical, unsupported by any factual allegation and should be dismissed for failing to state a claim (Count 1)

Plaintiffs allege that Plaintiff Olson registered her jury polling report with the U.S. Copyright Office, on December 8, 2022, and that, on the same date, they sent a "Cease-and-Desist email . . . demanding that each Defendant take down and immediately cease all use(s) of

Plaintiffs' Follow-on Study and Report." Am. Compl., ¶¶ 106.  Because "no Defendant named

herein has made any efforts to take down the report or compensate Plaintiffs," *id*. at ¶ 107,

Plaintiffs contend that the Smith Defendants are "liable for statutory damages of up to $150,000,

plus attorneys' fees and costs." *Id.*, ¶ 109.  This incomprehensible, contrived claim fails for

several reasons.

    First, Plaintiffs have pleaded no facts showing that *the Smith Defendants have* "us[ed],

cop[ied], fil[ed] in court, publicly display[ed], distribut[ed], or otherwise commercially

exploit[ed] Olson's Report. . ." Compl., ¶ 114.  As indicated above, the Amended Complaint

does not allege facts showing that the Smith Defendants used Plaintiffs' work product in any

manner.  It does not allege that the Smith Defendants filed Olson's "Report and Follow-on

Study" in *Nordean* (or anywhere else); it does not allege facts showing that the Smith

Defendants actually joined a motion in which another defendant filed the "Report and Follow-on

Study" (as opposed to joining defendant Tarrio's venue transfer motion before Hull retained

Plaintiffs' services); and it does not even allege that the Smith Defendants made oral reference to

the "Report and Follow-on Study" in *Nordean*—or at any other point in time.

    Even if Plaintiffs had properly pleaded that Nordean (and thus the Smith Defendants)

joined Hull's "motion for extension"—though the public *Nordean* record does not support that

allegation—that would not state a claim for relief that is plausible on its face.  Plaintiffs fail to

understand that criminal defendants may join *the relief* sought by a co-defendant's motion *for*

*extension of time* for many reasons—not just the particular speculative reason Plaintiffs wish to

isolate, namely, use of Olson's work product.  Nordean could have joined an extension motion

because his counsel wanted more time before trial; because he needed time for another motion he

wished to file; or for any number of reasons.  Thus, even if the Court finds that Plaintiffs have

properly pleaded that Nordean joined Hull's extension motion somehow, that does not establish that his counsel made use of the content of Plaintiffs' alleged copyright.

Second, Plaintiffs' copyright infringement claim is chronologically confused. They claim that Daniel Hull made use of the "Report and Follow-on Study" in a filing made on October 10, 2022. Am. Compl., ¶ 91. Yet Plaintiff Olson's copyright on the Report and Follow-on Study was not allegedly obtained until December 8, 2022. *Id.*, ¶ 111. The claim appears to be that, at that point, defense counsel in *Nordean* should have "made [] efforts to take down the report. . ." *Id.*, ¶ 107. But, again, the public docket shows that defendant Nordean—and by extension, the Smith Defendants—did not even "put the report up" in the first place. *Nordean*, 21-cr-175-TJK, ECF 477. To repeat, the public record shows that Plaintiffs' work product was filed by Hull alone. *Nordean*, 21-cr-175-TJK, 11/02/2022 Minute Order. The Amended Complaint does not explain how the Smith Defendants were/are supposed to "take down the report"—when it was not their case filing. Moreover, the Amended Complaint does not plead any facts showing use of the Report and Follow-on Study by Nordean (and the Smith Defendants) subsequent to December 8, 2022, when the alleged copyright was obtained (presumably to contrive federal jurisdiction in this breach-of-contract case).

Third, the Complaint pleads no facts showing that the Smith Defendants are "secondarily liable" for copyright infringement. Am. Compl., ¶ 119. It has pleaded no facts showing that the Smith Defendants' "employees, contractors or agents" ever used the allegedly copyrighted material in any manner.

Fourth, the Complaint pleads no facts showing that the Smith Defendants "directly benefitted financially from copyright infringement of the Report." Am. Compl., ¶ 117.

Fifth, the Complaint pleads no facts showing the Smith Defendants' "willful" infringement of any copyright, so Plaintiffs are not entitled to "statutory damages up to a maximum amount of $150,000." Am. Compl., ¶ 107.

Sixth, the Complaint pleads no facts showing how Plaintiff Olson's "actual damages" (in the form of "vendors not being paid," Am. Compl., ¶ 104) were caused by the alleged copyright infringement, as opposed to Hull's breach of contract or fraud.  Am. Compl., ¶ 122.

Seventh, the Complaint alleges that "Olson has no adequate remedy at law." Am. Compl., ¶ 125.  In that case, Plaintiffs' claims for actual and statutory damages should be dismissed.[10]

### C.   The Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining non-federal question claims against the Smith Defendants (Counts 2, 5)

The Complaint asserts federal subject-matter jurisdiction on account of its copyright claim alone.  Am. Compl., ¶¶ 22-23.  It does not assert diversity subject-matter jurisdiction.  28 U.S.C. § 1332.  Because the copyright claim against the Smith Defendants should be dismissed, the Court should further decline to exercise pendent jurisdiction over Plaintiffs' non-federal question claims.

The Court "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if. . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). "The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion, as 'pendent jurisdiction is a doctrine of discretion, not a plaintiff's right.'" *Henson v. Howard Univ.*, 2020 U.S. Dist. LEXIS 22436, at *12 (D.D.C.

---

[10] In the Relief Requested section of the Amended Complaint, Plaintiffs request punitive damages on their fraud claims alone, against the Hull Defendants.  Am. Compl., ¶ 162(I). However, earlier the Amended Complaint states that it seeks punitive damages against all Defendants.  *Id.*, ¶ 4.  Plaintiffs have pleaded no facts that would entitle them to punitive damages against the Smith Defendants and that claim for relief should be dismissed.

Feb. 10, 2020) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

"When deciding whether to exercise supplemental jurisdiction over state claims, federal courts

should consider judicial economy, convenience, fairness, and comity." *Id.* (internal quotation

marks omitted).  "When all federal claims 'are eliminated before trial,' however, those factors

'will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.*

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  Accordingly, the

Court should decline to exercise pendent jurisdiction here over Plaintiffs' remaining claims.

> **D.    Plaintiffs' remaining contract claims against the Smith Defendants
> should be dismissed for failing to state claims (Counts 2,5)**

>> **1.    Plaintiffs' contract claim against the Smith Defendants is frivolous**

Should the Court exercise pendent jurisdiction over Plaintiffs' contract claim, it should be

dismissed for failure to state a claim for relief that is plausible on its face.  There are four

elements to a breach-of-contract claim in the District of Columbia: (1) a valid contract between

the parties; (2) an obligation or duty arising out of that contract; (3) a breach of that duty; and (4)

damages caused by breach.  *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014).  To prove

a contract formed in D.C., the party seeking to enforce it must establish: (1) agreement as to all

material terms; and (2) an intention to be bound.  *New Econ. Capital, LLC v. New Markets*

*Capital Group*, 881 A.2d 1087, 1094 (D.C. 2005).

The Amended Complaint's breach-of-contract claim against the Smith Defendants does

not reach stage one.  It does not allege any facts showing the Smith Defendants reached any

agreement with Plaintiffs concerning Olson's Report and Follow-on Study.  Indeed, the

Complaint does not allege that Plaintiffs and the Smith Defendants have ever communicated

about anything.  Accordingly, Count 2 should be dismissed.

That leaves the question whether the Amended Complaint adequately pleads an agency theory.  It does not.  An agent may bind the principal to a contract if the agent entered into a contract while acting with actual or apparent authority.  *E.g.*, *Uhar & Co. v. Jacob*, 840 F. Supp. 2d 287, 291 (D.D.C. 2012).  "'An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *CapitalKeys LLC*, *v. Dem. Rep. of Congo*, 2022 U.S. App. LEXIS 20367, at *5 (D.C. Cir. 2022) (quoting Restatement (Third) Of Agency § 2.01 (2006)).  An agent's "'apparent authority originates with expressive conduct by the principal toward a third party' and 'is present only when a third party's belief is traceable to manifestations of the principal.'" *Id.* (quoting Restatement (Third) of Agency § 3.03 cmt. b); *see also Maurice Elec. Supply Co. v. Anderson Safeway Guard Rail Corp.*, 632 F. Supp. 1082, 1089 n. 13 (D.D.C. 1986) ("In sum, the key to apparent authority is whether the principal . . . acted in some way that permitted the agent . . . to mislead [the third party] as to the authority of [agent] to bind [the principal].").

The Amended Complaint fails to plead facts satisfying any of these agency theories.  First, it pleads no facts showing that Hull was somehow an agent of the Smith Defendants.  Hull is a member of a law firm called Hull McGuire PC.  The Smith Defendants are not members of that firm.  The Smith Defendants are members in a firm called David B Smith PLLC.  Hull represented defendant Joseph Biggs in *Nordean*; the Smith defendants represented Ethan Nordean.  The Amended Complaint does not allege a joint defense agreement or any common interest agreement among Biggs and Nordean.  (There was none.)  It does not allege any facts showing that Hull was a bona fide agent of the Smith Defendants.  The Complaint therefore fails

19

to allege facts showing that Hull could bind the Smith Defendants to a contract with Plaintiffs as some sort of agent.

Second, even if the Amended Complaint can somehow be construed to plead that Hull was an agent of the Smith Defendants, it fails to plead facts showing that Hull had actual authority to bind the Smith Defendants to this alleged contract with Plaintiffs.  For the Complaint does not allege facts showing that the Smith Defendants in fact manifested their desire that Hull engage Plaintiffs' services.  *Dem. Rep. of Congo*, 2022 U.S. App. LEXIS 20367, at *5.  Hull could simply have misled Plaintiffs into thinking so.  (And that is in fact what occurred, assuming the truth of Plaintiffs' allegations about Hull's communications with them.)[11]  The Amended Complaint's one-line allegation that Hull had "actual and/or apparent authority" to speak on behalf of all defense counsel in *Nordean* (Am. Compl., ¶ 29) is a legal conclusion whose truth the Court is not required to presume at the motion-to-dismiss stage.  *Iqbal*, 556 U.S. at 678.  The Amended Complaint does not allege any facts showing that Plaintiffs undertook any diligence whatsoever to determine that Hull's alleged representations about "speaking on behalf of all Defendants" were true.

Third, the Complaint alleges no facts showing Hull's "apparent authority" to bind the Smith Defendants to a contract with Plaintiffs.  It fails to allege any facts showing the Smith Defendants' "expressive conduct . . . toward" Plaintiffs giving them reasonable cause to believe Hull had authority to contract on behalf of the Smith Defendants.  *Dem. Rep. of Congo*, 2022 U.S. App. LEXIS 20367, at *5.  Again, the Complaint alleges *no communication between*

---

[11] The October 28 emails incorporated by reference into the Amended Complaint show that this is exactly what occurred.  *E.g.*, Exh. 4.

*Plaintiffs and the Smith Defendants at all*, *even after the Smith Defendants made Plaintiffs aware*

*of Hull's inaccurate representations and asked for a phone call to clarify matters.*

Fourth, Plaintiffs' claims are internally inconsistent.  Their breach-of-contract claim asks

the Court to assume the truth of Hull's representations to Plaintiffs about speaking on behalf of

the Smith Defendants.  Yet, absurdly, Plaintiffs' fraud claim against Defendant Hull demands

that the Court assume just the opposite.  Count 3 alleges:

> Plaintiffs alleges [sic] that Defendant Hull represented to Plaintiffs that if Plaintiffs would conduct the Follow-on Study and author the Report that *Defendants, as promised and represented by Hull, intended to compensate Plaintiffs for conducting the Follow-on Study and for license to use Plaintiffs' Report . . . .*
>
> *Defendant Hull's representations were false*

Am. Compl., ¶¶ 137, 138 (emphasis added).

If, as Plaintiffs allege, Hull lied to Plaintiffs about speaking on behalf of the other defense

counsel, then by definition Hull was not an agent to the Smith Defendants and capable of binding

them to the contract.

For all these reasons, Count 2 should be dismissed for failure to state a claim for relief

that is plausible on its face.

## 2.    Plaintiffs' unjust enrichment claim should be dismissed (Count 5)

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant;

(2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention

of the benefit is unjust." *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009)

(quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).

The Amended Complaint fails to plead an unjust enrichment claim against the Smith

Defendants.  First, Plaintiffs have not conferred a benefit on them.  As explained, the Amended

Complaint fails to plead facts showing that the Smith Defendants have ever used or filed

Plaintiffs' Report or Follow-on Study.  Second, the Smith Defendants cannot "retain the benefit," as they have never asked any court to consider Plaintiffs' Report or Follow-on Study in service of an argument they have made for their client.  As explained above, to remove any potential doubt on that score, the Smith Defendants have advised Plaintiffs they will file a notice in the *Nordean* case clarifying that they will not use and have never used Plaintiffs' work product.  As the Smith Defendants also explained above, they cannot "pull down" Plaintiffs' work product from the docket in *Nordean* as they never filed it in the first place.

**Conclusion**

For all the foregoing reasons, the Smith Defendants move the Court to dismiss the Amended Complaint's claims against them.

Dated: June 27, 2023         Respectfully submitted.

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway
Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Smith Defendants*

<u>**Certificate of Service**</u>

I hereby certify that on the 27th day of June, 2023, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

_/s/ Nicholas D. Smith_
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway
Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

.