UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN LUX RESEARCH, *et al.*,

Plaintiffs,

v.

HULL MCGUIRE PC, *et al.*,

Defendants.

Civil Action No. 23-523 (JEB)

## MEMORANDUM OPINION

While the leaders of the Proud Boys have now been convicted and sentenced for their roles in the January 6, 2021, insurrection, smaller waves from their trial continue to wash ashore. This iteration features a squabble between a jury consultant — Plaintiffs In Lux Research and its owner, Lindsay Olson — and the lawyers representing the Proud Boys.

In the lead-up to trial, the Proud Boys — Joseph Biggs, Ethan Nordean, Zachary Rehl, Henry "Enrique" Tarrio, and Dominic Pezzola — sought a transfer of their case out of D.C., arguing that jurors in the District are so prejudiced against defendants in January 6 cases that they could not receive a fair and impartial trial here.  To support that effort, one of the defense lawyers, John Daniel Hull — allegedly acting on behalf of all the Proud Boys' defense lawyers — hired In Lux Research to conduct a jury polling analysis for a $30,000 fee.  Plaintiffs delivered a report confirming that the District's attitude toward defendants involved in the Capitol riot is decidedly negative, but no payment ever arrived.

Once it became clear that they were not getting compensated for their services, Olson and In Lux Research initiated this lawsuit naming thirteen Defendants: eight lawyers and five law firms involved in the Proud Boys' trial.  Plaintiffs assert claims against all Defendants for

copyright infringement, breach of contract, and unjust enrichment, and claims against just Hull for intentional misrepresentation and promissory fraud.

All Defendants except Hull and his law firm now separately move to dismiss Plaintiffs' claims against them. As the Court agrees that Plaintiffs fail to state a claim of copyright infringement against Moving Defendants, it will dismiss that count and decline to exercise supplemental jurisdiction over the remaining non-federal claims against them.

## I.    Background

### A.  Factual Background

At this stage, the Court draws the facts from the Amended Complaint, the operative pleading here, as it must. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It does not, conversely, consider the Hull Defendants' Answer, as Plaintiffs seem to request. See ECF No. 58 (Opp.) at 2–3, 21–22, 26. That Answer is not part of Plaintiffs' pleadings, and the Court need not treat its allegations as true.

Olson is a Texas resident who owns and operates In Lux Research, a firm that offers jury-polling services. See ECF No. 27 (Am. Compl.), ¶¶ 5–6. Olson's initial multi-district comparative-attitude study and report that she prepared for the Oath Keepers' trial put In Lux Research on the map in early 2022. Id., ¶ 57. By the time of the events giving rise to this lawsuit, Olson and In Lux Research had "become recognized as leading experts on the question of community attitude toward participants in the January 6, 2021, events at the U.S. Capitol." Id., ¶¶ 52, 57.

Given these credentials, in late August 2022, Hull — representing Biggs — reached out to Olson. Id., ¶ 26. The Proud Boys were seeking a transfer of their case, United States v. Nordean, No. 21-175 (D.D.C.), out of the District. To support that effort, Hull expressed interest

in hiring In Lux Research to conduct an updated study on community attitudes toward January 6 defendants.  Id., ¶¶ 26–27.  Such an update was necessary, he explained, because the "January 6 Congressional committee hearings occurring throughout the summer of 2022" may have influenced attitudes since the poll that Plaintiffs originally did for the Oath Keepers' trial.  Id., ¶ 32.

About two weeks later, on September 10, Hull informed Olson that the deadline to file documents in support of the motion to transfer venue was September 30.  Id., ¶ 30.  Because that date "was fast approaching," he "pleaded with [her] to prioritize their poll and report over Plaintiffs' other projects."  Id.  Olson agreed, and they negotiated a fee of $30,000 — the maximum, Hull said, that "all Defendants had authorized."  Id., ¶¶ 31–33.  Olson advised Hull that In Lux Research "do[es] not generally create reports without some prepayment."  Id., ¶ 65.  Over the coming days, Hull and Olson exchanged text messages about expenses and getting the first phase of the study started.  Id., ¶¶ 36–40.  At one point, he instructed her to "keep moving."  Id., ¶ 36.  Twice, he assured her: "We're good."  Id., ¶¶ 39, 40.

In those conversations and throughout all of his communications with Olson, Hull implied — and at times stated explicitly — that he was acting at the request and on behalf of all of the defense lawyers representing the criminal defendants in Nordean.  Id., ¶¶ 27, 29, 30, 32, 33, 35, 37, 39, 46, 54, 62, 74, 86.  Plaintiffs were thus, understandably, left with the strong impression that all Defendants were contracting with Plaintiffs, would be using Plaintiffs' study and report, and (collectively) planned to pay the $30,000 fee.  Id., ¶¶ 27, 32, 33, 51, 68.

On September 21, Olson emailed Hull a "detailed breakdown of the $30,000 Plaintiffs had agreed to accept" and attached an invoice.  Id., ¶¶ 43, 44.  Hull thanked her.  Id., ¶ 44.  A few days later, after Plaintiffs had commenced the polling phase of the study, he forwarded the email

to the other Defendants.  Id., ¶¶ 46, 53–56.  "Scroll down and let me know what you think," he wrote.  Id., ¶ 57.  "This pollster Lindsay Olson did the Oathkeepers' [sic] previous jury work. I'm impressed with her.  I like the quote.  And she's already working at [sic].  But I'll need everyone's help getting $ for this.  Nick [Smith] and Carmen [Hernandez] especially."  Id.

Meanwhile, Hull continued to text with Olson about her work on the ongoing study, never expressing any doubt about whether she would be paid or whether the other defense lawyers were on board.  Id., ¶¶ 58–59, 61.  On September 27, Hull called Olson and "explain[ed] that all Defendants may have found a way to have some or all of the costs of [the study and report] paid for by [Criminal Justice Act] funds."  Id., ¶ 62.  Because Hull "did not know what information would be required for a CJA funding application," he asked Plaintiffs to coordinate a call with another defense lawyer, Carmen Hernandez.  Id., ¶¶ 62-63.  Olson texted Hernandez, but she never replied.  Id., ¶¶ 63–64.

On September 29, with the deadline to supplement the motion to transfer venue one day away, Plaintiffs informed Hull that they "were now free to begin work on the report" interpreting their study's findings.  Id., ¶ 66.  That evening, Hull filed a motion for an extension of time in Nordean, noting that Plaintiffs' work was still under way and seeking ten additional days to supplement the transfer motion.  Id., ¶ 69.  Hull's motion stated twice that "[t]he other four defendants join in this Motion."  Id.; see also id. ("[D]efendants Tarrio, Rehl, Pezzola, and Ethan Nordean join in the instant motion for an extension . . . .") (alterations omitted).  Hull emailed a copy of the motion to Olson, with a message stating, "And we're off … Dan :)."  Id., ¶ 72. Plaintiffs replied that they would "get it done" by the new proposed deadline, October 10.  Id.

Over the next week and a half, Plaintiffs continued to work on the study but "did not commence work on the Report because payment had not been made."  Id., ¶ 74.  Hull forwarded

Plaintiffs an email from Hernandez listing "what was needed from Plaintiffs to help Defendants with a [CJA] funding application" and clarifying that "[t]he Court will not pay in advance." Id., ¶¶ 76–77. Olson replied asking Hull, "Should [Plaintiffs] stop?" Id., ¶ 78. "Nope," Hull immediately responded. "Keep going." Id., ¶ 79. Hull "advised Plaintiffs that the Court was in favor of ordering funding" and explained that "the funds would need to be paid directly to Plaintiffs and could not be paid as a reimbursement to Defendants," so "Plaintiffs would need to complete the project before being paid." Id., ¶ 80. Hull warned Olson that if she did not complete the report, "J6 Defendants[] would be greatly prejudiced and . . . Plaintiffs would be to blame." Id., ¶ 81. With that "additional pressure," and despite no sign of the $30,000, Plaintiffs began work on the report. Id., ¶¶ 82–85.

Olson dotted her i's and crossed her t's as the new deadline approached. On October 8, she texted Hull asking for "a complete list of attorneys who were using the report and Plaintiffs' services so that Plaintiffs could include that information in the comprehensive report." Id., ¶ 87. Hull replied, "All of them." Id. He later clarified that there were five defendants, and the "[l]awyers are respectively J. Dan Hull of Hull McGuire PC [Biggs], Nicholas and David Smith [Nordean], Carmen Hernandez [Rehl], Nayib Hassan [Tarrio] and Steven Metcalf of Metcalf & Metcalf [Pezzola]." Id., ¶ 89.

On October 10, Plaintiffs delivered the Multi-District Comparative Community Attitude Report to Hull, as promised. Id., ¶ 90. Later that day, Hull filed the Report as an attachment to a supplement to the motion to transfer venue. Id., ¶ 91. The supplement stated that the Report was submitted "on behalf of all five defendants" and "was joined by all defendants." Id. A few days later, Nayib Hassan and Sabino Jauregui — Tarrio's lawyers — filed a motion for Olson to testify in support of the motion to transfer venue. Id., ¶ 94. After a hearing on the transfer

motion (without Olson's testimony), at which most Defendants appeared, Judge Timothy Kelly denied the motion.  Id., ¶¶ 98, 101.  Although not relevant to the instant case, the five Proud Boys defendants were ultimately convicted in a 2023 trial.

Wondering about their compensation, Plaintiffs started asking Defendants about the status of the $30,000 they were owed.  Id., ¶ 97.  With no payment in sight, Plaintiffs notified Defendants that "payment was required to avoid legal action."  Id., ¶ 103.  The response: crickets.  Plaintiffs followed up with a cease-and-desist letter, demanding that Defendants "take down and immediately cease all use(s)" of the Report.  Id., ¶ 106.  Again, no payment.  In early December, Olson registered the Report with the U.S. Copyright Office.  Id., ¶ 111.  On February 17, 2023, Plaintiffs sent another takedown notice, this time demanding payment based on copyright infringement.  Id., ¶ 107.

To this day, the Report remains on the Nordean docket, and Plaintiffs have not received the $30,000 they are owed.  Id., ¶ 107.

B.  Procedural Background

On February 24, 2023, they accordingly initiated this lawsuit against six defense lawyers and four law firms involved in Nordean: John Daniel Hull and Hull McGuire PC, who represented Biggs; David B. Smith, Nicholas D. Smith, and David B. Smith, PLLC, who represented Nordean as court-appointed counsel; Carmen D. Hernandez, who represented Rehl as court-appointed counsel; Nayib Hassan and the Law Offices of Nayib Hassan, P.A., who represented Tarrio; and Steven Alan Metcalf, II, and Metcalf & Metcalf, P.C., who represented Pezzola.

Plaintiffs subsequently filed an Amended Complaint, adding two more defense lawyers and one more law firm as Defendants: Sabino Jauregui and Jauregui Law, P.A., who — with the

Hassan Defendants — represented Tarrio; and Norman A. Pattis, who — with the Hull Defendants — also represented Biggs.  The Amended Complaint consists of five counts: three against all Defendants, and two against just Hull.  Against all Defendants, Plaintiffs assert copyright infringement (Count I), breach of contract (Count II), and unjust enrichment (Count V).  See Am. Compl., ¶¶ 110–33, 156–60.  Against Hull alone, they allege intentional misrepresentation (Count III) and promissory fraud (Count IV).  Id., ¶¶ 134–55.

All Defendants other than the Hull Defendants — viz., the Smith Defendants, Hernandez, the Hassan Defendants, the Metcalf Defendants, the Jauregui Defendants, and Pattis — now move to dismiss the counts against them.  While they move separately, Hernandez, the Hassan Defendants, the Metcalf Defendants, the Jauregui Defendants, and Pattis all join and incorporate the Smith Defendants' Motion and, in some instances, each other's.  See ECF Nos. 32 (Smith MTD), 39 (Hernandez MTD) (joining Smith MTD), 41 (Metcalf MTD) (joining Smith MTD and Hernandez MTD), 42 (Hassan MTD) (joining Smith MTD), 56 (Pattis MTD) (joining Smith MTD, Hernandez MTD, Metcalf MTD, and Hassan MTD), 57 (Jauregui MTD) (joining Smith MTD, Hernandez MTD, Metcalf MTD, Hassan MTD, and Pattis MTD).

## II.    Legal Standard

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).  That Rule requires that a court dismiss a claim when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); see also Iqbal, 556 U.S. at 678.  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference

unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In evaluating the sufficiency of a plaintiff's complaint under Rule 12(b)(6), the court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice," including "public records." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004).

## III.    Analysis

The Court begins with the sole federal cause of action, copyright infringement, as that provides the jurisdictional hook permitting Plaintiffs to litigate in federal court.  After concluding that this count fails to state a claim against Moving Defendants, the Court explains why it will not exercise supplemental jurisdiction over Counts II and V.

### A.  Copyright Infringement

Count I alleges that Defendants directly and secondarily infringed Olson's copyright in the Report in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*  Moving Defendants urge the Court to dismiss, contending that the Amended Complaint makes out no

such claim.  See Smith MTD at 15–16.  The Smith Defendants also maintain that use of copyrighted material in litigation would, in any event, fall under the "fair use" doctrine, which allows for the unlicensed use of copyrighted materials in certain circumstances.  See ECF No. 59 (Smith Reply) at 8–12.  As the Court agrees with Moving Defendants that the Copyright Act count is deficient, it need not grapple with fair use.

Before separately addressing direct and secondary infringement, the Court offers a brief clarification regarding the scope of the facts it considers in evaluating the sufficiency of Plaintiffs' copyright claim.  The Court need not "accept as true" the Amended Complaint's "factual allegations insofar as they contradict . . . matters subject to judicial notice."  Kaempe, 367 F.3d at 963; see Jimenez v. McAleenan, 395 F. Supp. 3d 22, 43 (D.D.C. 2019) (declining to accept a factual allegation that "is directly contradicted by evidence subject to judicial notice"). Moving Defendants, accordingly, ask the Court to take judicial notice of the docket and certain motions and orders in Nordean, which they contend show some of Plaintiffs' allegations to be false.  See Smith MTD at 8.  Plaintiffs object, "request[ing] that the Court rely solely on what has been plead [sic] in the [Amended Complaint]" instead of "independently study[ing] the voluminous record in Nordean."  Opp. at 22.

While the Court appreciates Plaintiffs' concern for its time and resources, it declines to close its eyes to the materials on which Plaintiffs' copyright claim relies.  The Nordean docket, motions, and orders that Plaintiffs cite in their Amended Complaint are "public records subject to judicial notice on a motion to dismiss."  Kaempe, 367 F.3d at 965; see Amobi v. Brown, 317 F. Supp. 3d 29, 35–36 (D.D.C. 2018) ("[C]ourts are permitted to take judicial notice of the dockets in other judicial proceedings . . . .").  The Court accordingly considers them in determining whether Count I survives these Motions.

1.  *Direct Infringement*

To state a claim for direct infringement under the Copyright Act, Plaintiffs must allege
(1) ownership of a valid copyright and (2) that Defendants infringed that valid copyright.
Sturdza v. United Arab Emirates, 281 F.3d 1287, 1295 (D.C. Cir. 2002); Spanski Enters., Inc. v.
Telewizja Polska, S.A., 883 F.3d 904, 909 (D.C. Cir. 2018); Feist Publ'ns, Inc. v. Rural Tel.
Serv. Co., 499 U.S. 340, 361 (1991); see 17 U.S.C. § 501.

In seeking dismissal, Moving Defendants do not devote much space to contesting the first
element.  That is for good reason: Olson's allegation that she received a certificate of registration
from the U.S. Copyright Office for the Report "constitute[s] prima facie evidence of the validity
of the copyright."  17 U.S.C. § 410(c); see Metropolis Special Police Dep't v. D.A.T.A. Mgmt.
Consulting, LLC, 2022 WL 59390, at *4 (D.D.C. Jan. 6, 2022) (plaintiff's registration satisfies
first element of direct infringement); DBW Partners, LLC v. Mkt. Sec., LLC, 2023 WL 2610498,
at *3 (D.D.C. Mar. 23, 2023) (similar).

Moving Defendants briefly gesture at the idea that Plaintiffs' claim is "chronologically
confused."  Smith MTD at 16; see also Am. Compl., ¶ 111 n.5.  Specifically, they observe that
the alleged infringement (use of the report on October 10, 2022) predated Olson's registration of
the Report with the Copyright Office (on December 8, 2022).  See Smith MTD at 16.  Insofar as
Moving Defendants mean to suggest that Plaintiffs' infringement claim is deficient because
Olson registered her work with the Copyright Office after the alleged infringement occurred, that
rests on a misunderstanding of copyright law.

An author like Olson "gains 'exclusive rights' in her work immediately upon the work's
creation."  Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019);
see Eldred v. Ashcroft, 537 U.S. 186, 195 (2003) ("[F]ederal copyright protection . . . run[s]

from the work's creation . . . .").  Indeed, one of the benefits of the Copyright Act is that it "safeguards copyright owners, irrespective of registration, by vesting them with exclusive rights upon creation of their works and prohibiting infringement from that point forward."  Fourth Est. Pub. Benefit Corp., 139 S. Ct. at 891.  A copyright claimant, accordingly, may bring suit based on infringement that occurred before copyright registration as long as she registers her work before pursuing her infringement claim.  See id. at 888; see also id. at 891 ("If infringement occurs before a copyright owner applies for registration, that owner may eventually recover damages for the past infringement, as well as the infringer's profits.").  Because Olson registered her Report before suing, Plaintiffs face no chronological confusion with respect to the first element of their claim.

That brings us to the second element: Defendants' alleged infringement of Olson's copyright.  An individual infringes a copyright when he "violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122" of the Copyright Act.  See 17 U.S.C. § 501(a); see also Spanski, 883 F.3d at 909.  Section 106 recognizes that a copyright owner has "the exclusive rights" to "reproduce" the copyrighted work, to "distribute copies" of it "to the public," and to "authorize" either of those acts.  See 17 U.S.C. § 106(1), (3).

Plaintiffs assert that Defendants violated Olson's rights in the Report "by using, copying, filing in court, publicly displaying, distributing, or otherwise commercially exploiting" it "without Olson's authorization."  Am. Compl., ¶ 114.  The thrust of the claim is that Defendants committed copyright infringement by filing the Report on the Nordean public docket.  Id.; Opp. at 15.  The challenge for Plaintiffs, however, is that Moving Defendants did not themselves file the Report; the Hull Defendants did.  Latching onto that issue, Moving Defendants contend that Plaintiffs failed to plausibly plead that Moving Defendants — as distinct from the Hull

Defendants — had anything to do with the Report, let alone reproduced or publicly distributed it. See Smith MTD at 15; see also Hernandez MTD at 5–6; Metcalf MTD at 14–16; Hassan MTD at 5; Pattis MTD at 5–7; Jauregui MTD at 1.  In other words, Moving Defendants rely on the oldest defense in the book: "It wasn't me."  Hoary as it may be, the Court agrees that they are correct.

Plaintiffs' rejoinder seems to be that even though Moving Defendants did not themselves file the Report in Nordean, they are liable through joining court filings that infringed Plaintiffs' copyright.  Specifically, Plaintiffs allege that Moving Defendants "joined" the following three court filings: (1) Tarrio's motion to transfer venue out of D.C., (2) Biggs's motion for an extension of time to supplement that motion, and (3) Biggs's supplement to the motion.  See Am. Compl., ¶¶ 69, 71, 91, 96, 99, 101; Opp. at 15, 24, 28, 29.  Unfortunately for Plaintiffs, their argument faces two hurdles, which together prove insurmountable.

To start, two of the three filings that Plaintiffs cite — the motion to transfer venue and Biggs's extension motion — did not in fact reproduce or distribute the Report.  See Nordean, ECF Nos. 349 (Tarrio Mot. for Transfer of Venue), 470 (Biggs Mot. for Ext.).  Nor could they have: the Report did not exist when they were filed.  Indeed, the Hassan and Jauregui Defendants filed the motion to transfer venue three months before Hull reached out to Plaintiffs about ever creating the Report in the first place.  Compare Tarrio Mot. for Transfer of Venue (filed May 2, 2022), with Am. Compl., ¶ 26 (Hull reached out to Plaintiffs for first time on August 31, 2022). And the extension motion was filed eleven days before Plaintiffs submitted the Report to Hull. Compare Biggs Mot. for Ext. (filed September 29, 2022), with Am. Compl., ¶ 90 (Plaintiffs delivered Report on October 10, 2022).  The very reason Biggs gave the Nordean court for seeking an extension of time to supplement the motion for a transfer of venue was that Olson needed more time to complete the Report.  See Biggs Mot. for Ext. at 2.  Because the motion for

a transfer of venue and the extension motion neither reproduced nor distributed the Report,

Plaintiffs' allegations that Moving Defendants joined these filings gets them nowhere.

Plaintiffs rejoin that by (allegedly) joining those filings, Moving Defendants indicated

that they "intended to use the . . . Report for their clients [*sic*] benefit."  Am. Compl., ¶ 69

(emphasis added).  Whether Moving Defendants intended to use the Report at some future time,

however, is beside the point.  An individual does not infringe a copyright by intending to use

copyrighted material without authorization; she infringes only by actually doing so.  See 17

U.S.C. § 501(a).  Additionally, as the Smith Defendants point out, a defendant may join in

seeking the relief that a co-defendant seeks in a motion for any number of reasons.  See Smith

MTD at 15.  For example, the attorney may be busy that particular week or believe that delay

could aid her client.  Even if Moving Defendants "agreed to . . . the relief sought by" Biggs's

extension motion (additional time to supplement the motion for a transfer of venue), they did not

necessarily do so "for the reason arbitrarily posited by Plaintiffs: future use of Plaintiffs'

Report."  Smith Reply at 5.

Plaintiffs next confront a second obstacle: two of the three filings they cite — Biggs's

motion for an extension of time and Biggs's supplement to the motion to transfer venue — were

not in fact "joined" by Moving Defendants.  See Biggs Mot. for Ext.; Nordean, ECF No. 477

(Biggs Supp.).  Both were filed by the Hull Defendants alone, on behalf of Biggs alone, signed

by Hull alone, and never joined by Moving Defendants.  See Biggs Mot. for Ext. ("Consent

MOTION for Extension of Time to Update District of Columbia Jury Prejudice Data for Motion

to Change Venue by JOSEPH R. BIGGS. (Hull, John)"); id. at 4 ("submitted" by "Counsel for

Joseph Randall Biggs" and signed by Hull alone); Biggs Supp. ("SUPPLEMENT by JOSEPH R.

BIGGS re 386 MOTION for Joinder re: Motion to Transfer Venue (Attachments: # 1 Exhibit

Multi-District and Multi-Period Comparative Community Attitude Study) (Hull, John)"); Biggs Supp. at 2 ("submitted" and signed by Hull alone).  Absent from the <u>Nordean</u> docket are motions by any of the Moving Defendants to join either Biggs's extension motion or supplement.

A brief note about procedure in joint criminal trials may illuminate the significance of that absence.  A lawyer representing one defendant cannot file a motion on behalf of a co-defendant who is represented by a different lawyer based solely on the first lawyer's say-so that he speaks for the co-defendant.  After all, co-defendants in a joint trial often have divergent interests and follow dissimilar strategies.  That is why the standard practice — which Judge Kelly followed in <u>Nordean</u> — is for a defendant aspiring to join a motion filed by a co-defendant to file her own so-called joinder motion, seeking to join her co-defendant's original motion.  <u>See</u> <u>Nordean</u>, Minute Order of February 9, 2022 (denying Rehl's motion to "join and adopt" all future "motions filed by co-defendants unless he moves not to adopt and join a particular motion" and explaining that "Rehl may move to join any motion filed by a co-defendant after the motion is filed").  No doubt Defendants understood that practice; they followed it meticulously throughout the litigation.  <u>E.g.</u>, <u>Nordean</u>, ECF Nos. 105, 175, 297, 375, 383, 386, 410, 446, 447, 451, 468, 467, 471, 501, 508.  That none of the Moving Defendants moved to join Biggs's extension motion or supplement is thus noteworthy.

Nonetheless insistent that Moving Defendants joined those filings, Plaintiffs point to the Hull Defendants' say-so.  <u>See</u> Am. Compl., ¶¶ 68–69, 71, 91, 96.  True, those Defendants wrote in the extension motion that "[t]he other four defendants join in this Motion," Biggs Mot. for Ext. at 1, and in the supplement that it "was joined by all defendants" and that the Report was submitted "on behalf of all five defendants."  Biggs Supp. at 1.  The Hull Defendants simply saying so, however, does not make it so, as explained above.

Perhaps realizing as much, Plaintiffs next turn to a more authoritative source: Judge Kelly. They contend that "the <u>Nordean</u> Court ruled in its order that the Smith Defendants did in fact join Hull Defendants' motion." Opp. at 22. That contention is as imaginative as it is false. For support, Plaintiffs cite the memorandum opinion and order in which Judge Kelly denied the motion to transfer venue. <u>Nordean</u>, ECF No. 531; <u>see</u> Am. Compl., ¶ 101. But nowhere in that opinion did he state — let alone "rule[]" — that any of the Moving Defendants "did in fact join" Biggs's extension motion or supplement. <u>See</u> Opp. at 22. Rather, Judge Kelly (correctly) stated that "Defendant Enrique Tarrio, joined by his four codefendants, moves to transfer venue" and explained why, even considering the information in the Report, he would deny the motion. <u>Nordean</u>, ECF No. 531 at 1, 9–13. Plaintiffs observe that Judge Kelly wrote that "Defendan<u>ts</u> . . . supplemented the motion with . . . polling from In Lux Research" and referred to "Defendants<u>'</u> own survey evidence." Am. Compl., ¶ 101 (quoting <u>Nordean</u>, ECF No. 531 at 2, 7) (emphasis added). Insofar as Plaintiffs invite the Court to consider Judge Kelly's use of a plural and placement of an apostrophe to constitute a "rul[ing]" that Moving Defendants joined Biggs's supplement (or extension motion), the Court declines to read so much into so little.

What is more, as the Smith Defendants observe, Judge Kelly hardly could have been clearer about who filed the supplement in a minute order one week earlier: "Ms. Olson conducted updated polling regarding possible prejudices against Defendants within the District of Columbia jury pool. <u>Defendant Biggs</u> submitted this study to the Court to supplement Defendant Tarrio's motion [to transfer venue]." <u>Nordean</u>, Minute Order of November 2, 2022 (emphasis added); <u>see</u> Smith MTD at 8.

With all that cleared up, the deficiencies in Plaintiffs' allegation that Moving Defendants infringed Olson's copyright by "joining" court filings that reproduced and distributed the Report

become evident.  The only filing that in fact reproduced and distributed the Report — Biggs's supplement to the motion to transfer venue — was not joined by Moving Defendants.  Even if Plaintiffs are correct that a lawyer can directly infringe a copyright merely by joining another lawyer's court filing that reproduces or distributes copyrighted material, Plaintiffs do not plausibly allege as much here.

Plaintiffs next attempt to support their direct-infringement claim by leaning on Moving Defendants' inaction after the alleged infringement occurred.  After the Report was filed, Moving Defendants allegedly failed to make "any efforts to take [it] down . . . , withdraw it from the docket, notify the Court that they withdraw from the motion that published the Report, withdraw being joined to Hull's supplement or the motion to transfer venue, or compensate Plaintiffs."  Id., ¶ 107; see id., ¶¶ 100, 115–16; Opp. at 14.  Particularly egregious, in Plaintiffs' view, is the fact that Moving Defendants attended a hearing on the motion for a transfer of venue after the Hull Defendants had filed the Report as a supplement, but failed to "inform[] the Court that Hull did not have authority to file the supplemental polling and publish Plaintiffs' Report without their consent."  Am. Compl., ¶¶ 98–99; Opp. at 15–16.

That inaction, however, is too thin a reed to support a direct-infringement claim.  As the Smith Defendants point out, Plaintiffs "do[] not explain how [Moving Defendants] were/are supposed to 'take down the report'—when it was not their case filing."  Smith MTD at 16.  Plaintiffs also cite no authority for the proposition that a lawyer commits copyright infringement when she does not: attempt to have copyrighted material that another lawyer filed publicly removed from a docket, "withdraw" from a motion that did not use copyrighted material (i.e., the motion for a transfer), or "withdraw" from a motion she never signed or joined in the first place (i.e., Biggs's supplement).  Plaintiffs themselves admit that "infringement could not be 'undone'

(the bell had been rung, the cow had already left the barn, etc.)," so it is unclear why they think that Moving Defendants' failure to attempt to "undo" the concededly undoable matters.  See Opp. at 14.

The next string of allegations on which Plaintiffs rely would be better deployed to support their other claims for relief.  To list a few: Plaintiffs "shared . . . the Report with the Hull Defendants for all Defendants' use in support of their J6 clients' motion(s) to transfer venue" in exchange for $30,000.  Id. at 13.  "Hull threatened Plaintiffs that if Olson did not complete the Study (despite not being paid anything at that time and given the short window), Olson would be to blame for the J6 defendants losing the motion to transfer venue."  Id. at 14.  "Plaintiffs did not author and deliver the Report to Defendants contingent on getting paid via the Government's CJA program."  Id.  "Despite Plaintiffs' reasonable expectations to be timely paid, Defendants have refused to compensate Plaintiffs . . . ."  Id.  Such allegations might be important to Plaintiffs' breach-of-contract claim, among others, but because they do not bear on whether Moving Defendants reproduced or publicly distributed the Report, they add nothing to the copyright count.

As a last resort, Plaintiffs suggest that the Hassan and Jauregui Defendants may be differently situated from the rest of Moving Defendants.  See Opp. at 16–17.  Unlike the others, the Hassan and Jauregui Defendants filed a motion requesting that Olson be allowed to testify about her Report in support of the motion to transfer venue.  See Am. Compl., ¶ 94; Opp. at 16.  And, "[e]ven more damning, the Hassan Defendants and Jauregui Defendants also requested," apparently through Hull, "that Plaintiffs conduct a jury survey in Florida for its use as an alternative venue because their client, Henry Tarrio, . . . believed he could get a fairer trial in Florida."  Opp. at 16–17, Am. Compl., ¶ 95.  The Court is unconvinced.  These allegations do

not make a difference for purposes of the direct-infringement claim because they do not change the fact that Plaintiffs never allege that the Hassan and Jauregui Defendants themselves reproduced or publicly distributed the Report, through their motion or otherwise.

2. *Secondary Liability*

"Although [t]he Copyright Act does not expressly render anyone liable for infringement committed by another," two secondary-liability doctrines — contributory and vicarious infringement — "emerged from common law principles and are well established in the law." Metro-Goldwyn-Mayer Studios Inc. v. Groksters, 545 U.S. 913, 930 (2005) (internal quotation marks and citations omitted; alteration in original).  "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  Id. (citations omitted).

Plaintiffs seem to invoke both contributory and vicarious infringement as theories of secondary liability.  See Am. Compl., ¶¶ 117–19.  Moving Defendants maintain that these theories achieve no more success than direct infringement.  To make out a claim of contributory infringement, Plaintiffs must allege "(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities."  Rundquist v. Vapiano SE, 798 F. Supp. 2d 102, 126 (D.D.C. 2011) (citation omitted).  The third element proves too much for Plaintiffs.  Even assuming that they have plausibly alleged direct infringement by the Hull Defendants and knowledge by Moving Defendants, they have not adequately alleged that Moving Defendants substantially participated in the infringement.

The Amended Complaint asserts that Defendants "each materially contributed to the other's infringement of Olson's Report, . . . with each Defendant joining in various motion [*sic*] and oral arguments before courts in this District that used the Report." Id., ¶ 118.  Similarly, Plaintiffs' Opposition claims that "all Defendants . . . materially contributed to the infringement because . . . each Defendant attended the hearing, joined in the motion to transfer and waived any defense by making no attempt with the Court to disclaim, object to Hull's motion, inform the Government or the Court that none joined the motion (or that Hull was not authorized to make such filing) or withdraw from Hull's motion when it was being argued orally on October 28, 2022." Opp. at 16.  As the Court has already explained, public records show that Moving Defendants did not, in fact, "join" the sole Nordean filing that used the Report.  Even if they had joined that filing, moreover, the Court is dubious that joining a filing, attending a court hearing, and failing to *sua sponte* inform the court that they did not consent to a filing that another lawyer made rise to the level of "substantial participation . . . in the infringing activities." Rundquist, 798 F. Supp. 2d at 126 (citation omitted).  Those acts are just the stuff of litigating a case. Cf. Newborn v. Yahoo!, Inc., 391 F. Supp. 2d 181, 189 (D.D.C. 2005) (plaintiff failed to allege substantial participation where "there is not even an allegation that the defendants' activities were anything more than the mere operation of the website businesses") (internal quotation marks and citation omitted).

Vicarious infringement fares no better.  To establish such a claim, Plaintiffs must allege that Defendants have "(1) the 'right and ability' to supervise the infringing activity and (2) a 'direct financial interest' in such activities." Rundquist, 798 F. Supp. 2d at 126.  It is far from clear that Plaintiffs have plausibly alleged that Moving Defendants had a "direct financial interest" in the unauthorized reproduction and distribution of the Report.  But even if the

Amended Complaint contains allegations that provide a sufficient basis upon which to infer that all Moving Defendants — or even just the Hassan and Jauregui Defendants — profited financially from the alleged infringement, <u>see</u> Am. Compl., ¶ 117, the Amended Complaint is devoid of any facts showing that Moving Defendants had the "right" or "ability" — let alone "right <u>and</u> ability" — to supervise the infringing activity.  <u>Rundquist</u>, 798 F. Supp. 2d at 126 (emphasis added).  Rather, Plaintiffs offer only a conclusory statement that "Defendants are each secondarily liable for their respective employees, contractors, and agents' infringement when Olson's Report was filed in Court for their Five J6 Defendant Clients without paying to secure a license to use Olson's Report."  Am. Compl., ¶ 119.  Insofar as Plaintiffs' argument is that the Hull Defendants are the "employees, contractors, [or] agents" of Moving Defendants such that Moving Defendants had the "right and ability" to supervise their filings, the Court sees no facts in the Amended Complaint showing that is so.  As the Smith Defendants observe, Plaintiffs do not allege an agreement authorizing the Hull Defendants to act on behalf of all of the criminal defendants or any facts showing that Hull himself was an employee, contractor, or agent of Moving Defendants, none of whom is employed by the same law firm as Hull.  <u>See</u> Smith MTD at 19–20.  With co-equal counsel, it cannot be said that any one supervised another.

In short, the Court concludes that Plaintiffs' allegations do not state a claim for relief against Moving Defendants under the Copyright Act.  To be clear, in so concluding, the Court offers no opinion as to whether Plaintiffs state a copyright-infringement claim against the Hull Defendants, who have not moved to dismiss here.  Nor does the Court opine on the question of whether use of the Report in litigation would constitute fair use, an "affirmative defense" that requires a "highly fact-intensive" analysis.  <u>Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.</u>, 2023 WL 5918491, at *3 (D.C. Cir. Sept. 12, 2023).

B.  <u>Remaining Counts</u>

With the Complaint shorn of Plaintiffs' sole federal claim (Count I) against Moving

Defendants, the Court must determine whether to retain jurisdiction over them via the remaining

state-law claims (Counts II and V).  Plaintiffs argue in a footnote that the Court need not address

the question of supplemental jurisdiction, as "there is complete diversity amongst the parties and

the amount in controversy exceeds $75,000."  Opp. at 26 n.10.  But the party seeking to invoke

federal jurisdiction must plead it, <u>see</u> Fed. R. Civ. P. 8(a)(1), 5A Charles A. Wright & Arthur R.

Miller, Fed. Prac. & Proc. Civ. § 1206 (4th ed. 2023), and Plaintiffs did not invoke diversity

jurisdiction in their Amended Complaint or plead an amount in controversy.  <u>See</u> Am. Compl.,

¶¶ 21–22 (invoking only federal-question jurisdiction).  In a case involving a $30,000 fee, it is

also unclear how the $75,000 amount-in-controversy hurdle is surmounted.  The Court must,

consequently, determine whether to exercise supplemental jurisdiction here.

Federal district courts are given supplemental (or "pendent") jurisdiction over state

claims that "form part of the same case or controversy" as federal claims over which they have

original jurisdiction.  <u>See</u> 28 U.S.C. § 1367(a).  By the same token, they "may decline to exercise

supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims

over which it has original jurisdiction."  <u>Id.</u> § 1367(c)(3).  The decision of whether to exercise

supplemental jurisdiction where a court has dismissed all federal claims is left to the court's

discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  <u>United

Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>see also</u> <u>Shekoyan v. Sibley Int'l</u>, 409

F.3d 414, 423 (D.C. Cir. 2005).

When deciding whether to exercise supplemental jurisdiction over state claims, federal

courts should consider "judicial economy, convenience, fairness, and comity."  <u>Shekoyan</u>, 409

F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  When all federal claims are eliminated before trial, however, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon, 484 U.S. at 350 n.7; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

These factors weigh against retention here.  The Court is dismissing the sole federal claim against the Smith Defendants, Hernandez, the Hassan Defendants, the Metcalf Defendants, the Jauregui Defendants, and Pattis.  This case has not progressed in federal court past these Motions to Dismiss, and the Court has developed no familiarity with the issues presented beyond the copyright claim it dismisses.  Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (holding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from its declining to exercise supplemental jurisdiction.  Finally, Plaintiffs will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter.  See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (citation omitted).  Plaintiffs may thus proceed in state or local court if they so desire.

C.  Leave to Amend

One final point bears mention: in their Opposition, Plaintiffs request leave to again amend their Complaint, this time to add a second copyright-infringement claim.  See Opp. at 1.

The D.C. Circuit has often reiterated, however, that "a request for leave [to amend] must be submitted in the form of a written motion."  <u>Benoit v. U.S. Dep't of Agric.</u>, 608 F.3d 17, 21 (D.C. Cir. 2010) (alteration in original) (citation omitted); <u>see also</u> Local Rule 15.1 (motion for leave to amend "shall attach, as an exhibit, a copy of the proposed pleading as amended"); <u>Kingman Park Civic Ass'n v. Gray</u>, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014) ("It is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss.").  Plaintiffs' request is therefore improper here, and the Court denies it.

## IV.    Conclusion

For the foregoing reasons, the Court will grant the Motions to Dismiss.  The case against Moving Defendants will be dismissed without prejudice.  The suit can thus proceed against only the Hull Defendants.  A separate Order so stating will issue this day.

/s/ <i>James E. Boasberg</i><br>
JAMES E. BOASBERG<br>
Chief Judge

Date:  September 19, 2023