**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN LUX RESEARCH,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **HULL MCGUIRE PC,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 23-523 (JEB)** |

**<u>MEMORANDUM OPINION</u>**

In Lux Research and its owner, Lindsay Olson, brought this case against the lawyers and law firms that represented a number of Proud Boys in a joint criminal trial stemming from the insurrection at the U.S. Capitol on January 6, 2021.  Plaintiffs claimed that one of the defense lawyers, John Daniel Hull, allegedly acting on behalf of the others, hired In Lux to conduct a jury poll for a $30,000 fee but failed to pay up.  Most Defendants — including Nayib Hassan, Sabino Jauregui, and their law firms — responded to the suit with motions to dismiss.  The Court granted those motions in a Memorandum Opinion and separate Order issued five months ago.

Two months later, however, Plaintiffs successfully moved this Court to partially vacate its dismissal Order and allow them to amend their Complaint to pull the Hassan and Jauregui Defendants back into the case.  The operative pleading now alleges that this set of Defendants used, without copyright authorization, an April 2022 report — prepared by In Lux for separate January 6 defendants in preparation for a separate criminal trial — in support of their effort to transfer their clients' case out of the District of Columbia.

As before, the Hassan and Jauregui Defendants now move to dismiss, contending that their reliance on the April 2022 report was both fair use and otherwise protected by 17 U.S.C. §

109(a).  Because the former issue is ordinarily not resolved until summary judgment — and Defendants' shoddy briefing has given the Court no reason to jump ahead — and the latter contention has little merit, the Court will deny the Motion.

## I.    Background

An account of the relevant factual background appears in the Court's prior Opinions in this case.  In Lux Rsch. v. Hull McGuire PC, 2023 WL 6121906 (D.D.C. Sept. 19, 2023) (In Lux I); In Lux Rsch. v. Hull McGuire PC, 2023 WL 8190821 (D.D.C. Nov. 27, 2023) (In Lux II).  To briefly summarize the allegations in the Second Amended Complaint, in the lead-up to their criminal trial, certain Proud Boys sought a transfer of their case, United States v. Nordean, No. 21-175 (D.D.C.), out of the District.  They argued that jurors here are so prejudiced against defendants in January 6 cases that they could not receive a fair and impartial trial.  To support the transfer effort, Hull hired In Lux to conduct a jury-polling analysis for a $30,000 fee.  See ECF No. 70-1 (Second Am. Compl.), ¶¶ 28–32.  In October 2022, Plaintiffs delivered their report, id., ¶ 114, and Hull filed it on the Nordean docket.  See Nordean, ECF No. 477 (Biggs Supp. Attaching October 2022 Report).  Yet no payment for Plaintiffs ever arrived.  See Second Am. Compl., ¶ 122.

They thus filed this suit in February 2023 against six defense lawyers and four law firms involved in Nordean, including Hassan and the Law Offices of Nayib Hassan, P.A.  See ECF No. 1 (Compl.).  They later added two more lawyers and one more firm, including Jauregui and Jauregui Law, P.A.  See ECF No. 27 (Am. Compl.), ¶¶ 17–19.  The First Amended Complaint asserted copyright infringement related to the October 2022 report, breach of contract, and unjust enrichment against all Defendants, id., ¶¶ 110–33, 156–60, and intentional misrepresentation and promissory fraud against Hull.  Id., ¶¶ 134–55.

All Defendants other than Hull and his firm separately moved to dismiss the counts against them.  See ECF Nos. 32; 39; 41; 42; 56; 57.  In their combined Opposition, Plaintiffs both defended the Amended Complaint and requested leave to amend it again.  See ECF No. 58 (Opp. to MTDs).  Specifically, they asked to add a claim against the Hassan and Jauregui Defendants for also infringing Olson's copyright in an earlier April 2022 report that In Lux had prepared for a separate trial of Oath Keepers' members, which the Hassan and Jauregui Defendants filed on the Nordean docket in May 2022.  Id. at 2; see Nordean, ECF No. 351 (Tarrio Notice Attaching April 2022 Report).

In September 2023, this Court granted the motions to dismiss and dismissed the case against all moving Defendants without prejudice.  See ECF No. 60 (Order Granting MTDs).  It concluded that the count asserting copyright infringement of the October 2022 report failed to state a claim because Plaintiffs did not plausibly plead that those Defendants — as distinct from the Hull Defendants, who remain in the case — reproduced or publicly distributed the report.  In Lux Rsch., 2023 WL 6121906, at *6–9.  Nor did Plaintiffs adequately allege that those Defendants were secondarily liable for the alleged infringement.  Id. at *9–10.  The Court thus found Plaintiffs' sole federal count against those Defendants inadequate and declined to exercise supplemental jurisdiction over the remaining ones.  Id. at *10–11.  As to Plaintiffs' request in its Opposition to add a claim to their Complaint, the Court explained that "a request for leave [to amend] must be submitted in the form of a written motion" and therefore denied Plaintiffs' request as improper.  Id. at *11 (quoting Benoit v. U.S. Dep't of Agric., 608 F.3d 17, 21 (D.C. Cir. 2010) (cleaned up)).

Still wishing to add a copyright-infringement claim against the Hassan and Jauregui Defendants based on their purportedly unauthorized use of the April 2022 report, Plaintiffs

subsequently moved both to partially vacate the Court's Order so as to reinstate these Defendants and for leave to amend their Complaint.  See ECF Nos. 69 (Mot. to Vacate), 70 (Mot. for Leave to Amend).  In November 2023, the Court granted both Motions, concluding that this relief was proper because Defendants "offer[ed] no substantive opposition to amendment and no prejudice [was] evident."  In Lux II, 2023 WL 8190821, at *1.  The operative pleading here, Plaintiffs' Second Amended Complaint, accordingly alleges, *inter alia*, copyright infringement against the Hassan and Jauregui Defendants based on their reproduction of the April 2022 report without authorization or payment to Plaintiffs.  See Second Am. Compl., ¶¶ 142, 144–47.  Specifically, it alleges that these Defendants infringed on Plaintiffs' copyright when, in May 2022, they filed the report on the Nordean docket to bolster their clients' motion to change venue in that case.  Id., ¶¶ 25–27; Nordean, Tarrio Notice Attaching April 2022 Report.

This set of Defendants now moves to dismiss the Second Amended Complaint, but only as to the claims specific to them — *i.e.*, the copyright-infringement claims regarding the April 2022 report.  See ECF No. 77 (MTD); Minute Order of December 12, 2023 (granting Hassan Defendants' Mot. to Join MTD).

## II.    Legal Standard

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).  That Rule requires that a court dismiss a claim when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); see also Iqbal, 556 U.S. at 678.  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference

unsupported by the facts set forth in the complaint.  <u>Trudeau v. FTC</u>, 456 F.3d 178, 193 (D.C.

Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), "a complaint must contain

sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its

face." <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted).  A plaintiff may survive a Rule

12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the

complaint "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550

U.S. at 555–56 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

In seeking dismissal, Defendants first contend that their reproduction of the April 2022

report was fair use; indeed, they see it as nothing more than moving a "publicly filed report in

Pacer [Public Access to Court Electronic Records] from one case location docket [] to another."

MTD at 1.  They alternatively argue that their actions are protected by the "first sale doctrine"

codified in 17 U.S.C. § 109(a).  <u>Id.</u> at 13.  Plaintiffs retort that the question of fair use is

ordinarily not resolved on a motion to dismiss and that this case should not be the exception.  <u>See</u>

ECF No. 81 (Pl. Opp.) at 8.  In any event, they continue, Defendants' use of the relevant report is

a clear example, not of fair use, but of copyright infringement.  <u>Id.</u> at 11–18.  As to the

alternative rationale proposed by Defendants, Plaintiffs rejoin that the first-sale doctrine "simply

does not apply to the facts as alleged."  <u>Id.</u> at 19.  The Court considers each issue in turn.

A.  <u>Fair Use</u>

Beginning with fair use, the Court agrees that this issue should not be decided at this

stage.  "In determining whether use made of a work . . . is a fair use," the Court must consider

among other things: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.

Fair use is thus a "mixed question of law and fact" and normally calls for an extensive review of the factual record generated by discovery.  Harper & Row Publishers, Inc. v. Nat'l Enters., 471 U.S. 539, 560 (1985); see also Nichols v. Club for Growth Action, 235 F. Supp. 3d 289, 295 (D.D.C. 2017) ("[F]air use is not traditionally decided on a motion to dismiss.").  Given the "limited access to all potentially relevant and material facts needed to undertake the" fair-use analysis at the pleading stage — there is no record to speak of other than the factual allegations in the Complaint, after all — it is unsurprising that "courts rarely analyze fair use" at this stage.  Browne v. McCain, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009).  Absent a reason to depart from this practice, then, courts ordinarily consider a fair-use defense "premature" at the motion-to-dismiss mark.  See Roe v. Bernabei & Wachtel PLLC, 85 F. Supp. 3d 89, 99 n.8 (D.D.C. 2015); cf. Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 691–92 (7th Cir. 2012) (deciding fair use on motion to dismiss because allegedly protected use was parody, so "the district court required only the [original and subsequent] videos to adjudicate this issue").

Here, Defendants have provided no reason for thinking that this is the exceptional case where fair use should be decided before discovery.  To the extent that they even acknowledge this potential roadblock, they puzzlingly cite a single case that states that it is proper to decide fair use "at the summary judgment stage if the historical facts are undisputed and the only question is the proper legal conclusion to be drawn from those facts."  MTD at 8 (quoting L.A.

Times v. Free Republic, 2000 WL 565200, at *4 (C.D. Cal. Apr. 4, 2000)) (emphasis added). Needless to say, simply quoting an unhelpful standard does not show why the Court should undertake this fact-intensive inquiry in the absence of a record.

Even if this standard extended to motions to dismiss, moreover, Defendants have not shown why the fair-use defense would succeed on the current record.  For one, some of the key facts here are, *contra* Defendants, in fact disputed.  Compare MTD at 8 (stating that copying of April 2022 report was for purpose of "educat[ing] . . . the Court") with Pl. Opp. at 12 (arguing that purpose of Defendants' use of report was commercial and not educational).  For another, Defendants — who bear the burden of establishing fair use, see Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994) ("fair use is an affirmative defense") — have yet to explain why the "proper legal conclusion" to draw from the available facts is that their actions were fair use. Instead, Defendants' briefing strategy seems to be as follows: blitz this Court with so many pages of case citations that, in its exhaustion, it will simply relent and agree with their conclusory statement that their docketing of the April 2022 report "for the convenience and education of the Court" was fair use.  See MTD at 8–12 (citing over a dozen cases without explaining how they apply to case at hand).

Last, and despite the copious citations Defendants have served up, they never address the cases that hold that the use of copyrighted material created for the purpose of litigation or arbitration in a separate litigation — *i.e.*, for the same purpose for which the work was created — is not fair use.  See, e.g., Images Audio Visuals Prods., Inc. v. Perini Bldg. Co., 91 F. Supp. 2d 1075, 1077–81 (E.D. Mich. 2000); Newegg Inc. v. Ezra Sutton, P.A., 2016 WL 674629, at *2 (C.D. Cal. Sept. 13, 2016); Ross v. Miller's Rexall Drugs, Inc., 1990 WL 314290, at *1 (Ga. Super. Oct. 10, 1990); see also William F. Patry, Patry on Fair Use § 3:72 (2017) (noting that

"[c]ourts have taken an appropriately dim view of efforts by litigants to avoid paying third parties' licensing fees for materials to be used in litigation").

Unwilling to reward such briefing deficiencies, the Court thus concludes that it is too early to decide fair use.

B.  First-Sale Doctrine

Next up is the first-sale doctrine.  This doctrine, which is codified in 17 U.S.C. § 1709(a), permits the lawful buyer of a copyrighted work to "resell, lend, give, or otherwise transfer [the] copy without violating the copyright holder's exclusive right to distribution." Capitol Records, LLC v. ReDigi Inc., 910 F.3d 649, 655 (2d Cir. 2018).  The lawful sale or transfer of a copy of the work thus "exhaust[s]" — or, in layman's terms, extinguishes — "the copyright owner's . . . exclusive distribution right" in that particular copy.  Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 524 (2013).  It does not, however, "result in the forfeiture or waiver of all" rights held by the copyright owner, since the doctrine concerns only the sold copy and not the underlying copyrighted material.  See Columbia Pictures Industries, Inc. v. Redd Horne, Inc., 749 F.2d 154. 159–60 (3d Cir. 1984); cf. Bobbs-Merrill Co. v. Straus, 210 U.S. 339, 350 (1908) ("The purchaser of a [work], once sold by authority of the owner of the copyright, may sell it again, although he could not publish a new edition of it.").  Like fair use, the first-sale doctrine is "an affirmative defense" that must be established by the party defending itself from an infringement claim.  Vernor v. Autodesk, Inc., 621 F.3d 1102, 1107 (9th Cir. 2010).

Defendants' submission once again leaves much to be desired.  They re-up their strategy of bombarding the Court with citations that may or may not bear on the issue at hand on their way to concluding that Plaintiffs' initial sale of the April 2022 report "exhausted" their right "to sell the report again."  See MTD at 13–14.  Yet they are silent on why this initial sale would also

exhaust Plaintiffs' exclusive right to <u>reproduce</u> the same report.  <u>See</u> <u>Geophysical Serv., Inc. v.</u> <u>TGS-NOPEC Geophysical Co.</u>, 850 F.3d 785, 794 (5th Cir. 2017) (despite first-sale doctrine, which limits copyright owner's general right to distribute, "[t]he owner of a lawfully made copy . . . is still forbidden from copying it . . . or publicly displaying it").  They are silent, too, on how the doctrine could protect their reproduction of the report, given that they neither commissioned nor paid for the initial copy of the report (or any copy, for that matter) and are therefore not its owners.  <u>See</u> 17 U.S.C. § 109(d) (first-sale doctrine does not shield a "person who has acquired possession of the copy . . . without acquiring ownership of it"); <u>Quality King Distribs., Inc. v.</u> <u>L'anza Rsch. Int'l, Inc.</u>, 523 U.S. 135, 146–47 (1998) (noting that first-sale doctrine does not provide defense to action "against any nonowner such as a bailee, a licensee, a consignee, or one whose possession of the copy was unlawful").

    In short, Defendants have not come close to carrying their burden of proving that their use of Plaintiffs' April 2022 report was protected by the first-sale doctrine.  The Court will accordingly reject this challenge, as it did the first.

## IV.    Conclusion

    For the foregoing reasons, the Court will deny the Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  <u>February 26, 2024</u>