UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN LUX RESEARCH, et al.,

      Plaintiffs,

v.

HULL MCGUIRE PC, et al.,

      Defendants.

Case No: 1:23-cv-523 (JEB)

### MOTION TO AMEND JUDGMENT OR FOR A NEW TRIAL

Pursuant to Fed. R. Civ. P. 59(e) and 59(a), Defendants Hull McGuire PC and J. Daniel Hull move to amend the judgment arising from the $77,000 damages verdict awarded at trial in this matter for breach of a $30,000 contract. The jury had no legally sufficient evidentiary basis to award the additional $44,000 at issue here. On January 28, 2025, the jury improperly (a) added interest to its award and (b) also undertook to calculate *compound* interest to the award. Moreover, in view of the exorbitant number ($77,000) selected for its final damages award concerning what was indisputably a $30,000 contract, the jury misapplied or ignored the Court's instructions on breach of contract damages and somehow improperly awarded indirect rather than direct compensatory damages. Defendants ask that the damage award be reduced to $30,000, before application of interest, if any is justified under D.C. law – which Defendants dispute. In the alternative, Defendants ask the Court for a new trial on the damages issue alone under Rule 59(a).[1]

---

[1] Defendants appreciate that the Court may view the issue of a jury's improperly awarding of excessive damages on a breach of contract damages – as opposed to mere liability for breach of contract – as an issue to be resolved under Fed. R. Civ. P. 50(a) (Motion for Judgment as a Matter of Law in a Jury Trial) rather than one under Rule 59. If so, Defendants request that the Court treat this motion as such under Rule 50.

1

**Background**

This case arises from a breach of a $30,000 polling services contract to support a venue transfer motion in a January 6th-related prosecution of five Proud Boys defendants. The contract was entered into in September 2022 and breached in late October 2022. Suit was filed in late February 2023 for, *inter alia*, copyright infringement, fraud and breach of contract. The trial took place on January 27 and 28, 2025. The jury rejected the copyright infringement (Count I) and fraud (Count III) claims against Defendants. However, it found in favor of Plaintiffs on the breach of contract claim (Count II). It awarded, however, a figure of $77,000 for breach of the $30,000 contract. See, Verdict Form, ECF No. 138.

**Applicable Law**

A federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*, 205 F.R.D. 1 (D.D.C. 2000); *City of Harper Woods Emples. Ret. Sys. v. Olver*, 577 F. Supp. 2d 124 (D.D.C. 2008). A governmental interest analysis is used by D.C. courts to determine the applicable substantive law. See, *Muller v. Massachusetts Mut. Life Ins. Co.*, 644 F. Supp. 916 (D.D.C. 1986). In a breach of contract action, absent an explicit choice of law clause in the contract itself, the Court should perform a governmental interest analysis to determine the applicable law. *Orchin v. Great-West Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138 (D.D.C. 2015); *Meehan v. U.S. Office Prods. Co. (In re U.S. Office Prods. Co. Sec. Litig.)*, 251 F. Supp. 2d 77 (D.D.C. 2003).

This analysis considers factors such as the place of contracting, negotiation, performance, the location of the subject matter, and the residence and place of business of the parties. *Peck v. SELEX Sys. Integration*, 270 F. Supp. 3d 107 (D.D.C.2017); *21st Century N. Am. Ins. Co. v. Nationwide Gen. Ins. Co.*, 2015 U.S. Dist. LEXIS 46390 (D.D.C. 2015). In this case, the goal of

the contract was to produce a an expert report to be used in litigation taking place in D.C. and involving a D.C.–based defendant. The place of performance and the location of the subject matter are both in D.C.Additionally, the buyer, Mr. Hull and his firm, are based in D.C.. These factors all support the application of D.C. law.[2]

## Legal Standard

Under subdivision (e) of Rule 59, where "the need to correct a clear error or prevent manifest injustice is obvious," an amendment or an alteration of the judgment is merited. *Harper v. Marcorp, Ltd.*, No. 20-CV-980 (BAH), 2023 WL 1765198, at *4 (D.D.C. Feb.3, 2023) (jury's calculation of compensatory damages was clearly improper, resulting in an amount double what the record at trial supported); "If the court determines that the award is excessive, a remittitur may be used instead of ordering new trial." *Id*. "In fixing the remittitur amount, the court is to reduce the damages to the maximum amount that the jury could have properly awarded." *Id*. at 1134. Remittitur is a practice sanctioned by long usage that gives the plaintiff the option of either submitting to a new trial or of accepting the amount of damages the court considers justified. *Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dept, Life with Cancer v. Omni Shoreham Corp.*, No. CV 20-784 (JDB), 2024 WL 5158796, at *14 (D.D.C. Dec. 18, 2024).

Also under Rule 59, a trial judge may order a new trial pursuant to subdivision (a) if the verdict is against the clear weight of the evidence or if the damages awarded are excessive. *Machesney v. Larry Bruni, M.D., P.C.*, 905 F. Supp. 1122, 1130 (D.D.C. 1995). "The Court should

---

[2] Alternatively, under the "substantial interest" approach, typically used in tort actions, the factors considered include the place of injury, the place where the conduct causing the injury occurred, the domicile and place of business of the parties, and the place where the relationship between the parties is centered. *Keene Corp. v. Insurance Co. of N. Am.*, 597 F. Supp. 934 (D.D.C. 1984); *Stromberg v. Marriott Int'l*, 474 F. Supp. 2d 57 (D.D.C. 2007). Here, the place of performance and the location of the subject matter are in D.C. and the buyer is based in D.C., leading to the conclusion that D.C. has a more substantial interest in the resolution of the issue than Texas.

determine if the verdict is beyond that which a reasonable jury could have properly awarded and not simply whether the judge would have awarded less." *Id*. at 1131.

Alternatively, judgment as a matter of law under Rule 50 is proper if the Court concludes that there is no legally sufficient evidentiary basis for a reasonable jury to have found in their favor under controlling law. *Hendry v. Pelland*, 73 F.3d 397 (D.C. Cir. 1996). Defendants have preserved their right to move under Rule 50 because they moved for judgment as a matter of law at the close of the Plaintiffs' evidence. See, T*eneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004). *Alkire v. Marriott Int'l Inc*., No. CIV.A.03 1087 CKK, 2007 WL 1041660, at *2 (D.D.C. Apr. 5, 2007). See also, n. 1, *supra*.

## **Argument**

It is black-letter law that damages for a breach of contract are measured by the non-breaching party's expectations, or the "benefit of the bargain." "Expectation damages typically are measured by (a) the loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, *less* (c) any cost or other loss that [the injured party] has avoided by not having to perform." *CapitalKeys, LLC v. Democratic Republic of Congo*, 278 F. Supp. 3d 265, 272–73 (D.D.C. 2017), quoting, Restatement (Second) of Contracts § 347. In a case where the breaching party contracted to pay a certain amount and paid less under the agreement, "it is easy to calculate" the proper measure of damages, which is the remaining amount that the defendants were obligated to pay upon signing the contract, but did not pay. *Id*. Damages may exceed the face value of the contract, but only where the additional damages were foreseeable. *Capitol Just. LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 23, 33 (D.D.C. 2009).

Given the evidence presented to the jury at this short trial, and the straightforward instructions it received from Court, the jury lacked a legally sufficient evidentiary basis to award of $77,000 – $44,000 more than the contract price of $30,000. This award of double the contract amount is bizarrely excessive on this record.

First, no evidence was adduced at trial that the parties could contemplate any damages to Plaintiffs at the time the contract was executed besides the $30,000 contract price itself. Only "direct" and not "indirect" damages for harm to Plainitffs were sought. Indirect evidence is not in the record and simply does not exist. While testimony and documents were admitted with respect to a $27,500 contract Plaintiffs had and lost with a vendor called Aristotle – a vendor Defendants had never heard of until shortly before trial – Plaintiffs themselves made it clear to the jury that they were not seeking contract damages for the loss of the Aristotle contract:

> BY MR. BARTOLOMEI
>
> Mr. Hoben, would you bring up Exhibit 1[Aristotle invoice].
>
> Q: This is something that Mr. Coleman brought up a few minutes ago regarding an Aristotle invoice.
>
> **Mr. Hull, you realize my client is not seeking damages for the amount of this invoice, you realize that?**
>
> A: I have never been sure. It just came up on the horizon recently. And it's a lot of money. It may be just something intended to inflame. I don't know.

Trial Tr. 17, lines 14-22 (Jan. 28, 2025) (emphasis supplied). At trial, moreover, at trial Plaintiffs sought no recovery for any other type of indirect damages.

Second, the very instructions given to the jury on January 28 on damages for the breach of contract claim spring from longstanding remedies law in the District of Columbia that compensatory damages are based on direct and not "secondary" or indirect harm. See, e.g., *Klayman v. Jud. Watch, Inc.*, 255 F. Supp. 3d 161, 169 (D.D.C. 2017). Whatever nomenclature is

5

used, damages must be based on the expectations of the parties and what they can foresee *at the time the contract* is struck. As the Court instructed the jury here:

> A plaintiff who is awarded a verdict for breach of contract is entitled to compensatory damages for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract. Alternatively, plaintiff may be entitled to such damages as may reasonably be supposed to have been **contemplated by both parties at the time they made the contract** as the probable result of the breach of such contract.
>
> Compensatory damages for breach of contract are designed under the law to place the injured party in as good a monetary position as that party would have enjoyed if the contract had been performed. What that position is depends upon what the parties reasonably expected at the time they made the contract. **The defendant is not liable for a loss that the parties did not have reason to foresee as a probable result of any breach.** While the loss must be a reasonably certain consequence of the breach, the exact amount of the loss need not be certain.

(ECF No. 136, at 8-9) (emphasis supplied). The above instructions received by the jury on January 28 are unambiguously expressed in terms of direct, not indirect, compensatory damages of the kind that are foreseeable at the time the parties were contracting. The jury's lopping of $44,000 in damages on top of the $30,000 contract price was a departure from this instruction.

Finally, the Court's instructions make no mention of pre-judgment or post-judgment "interest" which the jury should calculate and award for damages to Plaintiffs. This is a matter the Court made clear, albeit outside the presence of the jury, was not a jury question. See, *Cobell by & through Cobell v. Jewell*, 260 F. Supp. 3d 1, 10 (D.D.C. 2017), *aff'd sub nom*. *Cobell v. Zinke*, 741 F. App'x 811 (D.C. Cir. 2018). In that regard, the parties have known since the afternoon of January 28 that the jury improperly added some kind of "interest" – at an unknown and unknowable rate – to its award and evidently made a calculation to "compound" the interest it awarded, which was also improper. See, *id*. Under such circumstances, the general rule under Fed. R. Evid. 606(b) prohibiting the impeachment of a jury verdict by post-trial juror statements may not apply. See, *TeeVee Toons, Inc. v. MP3.Com, Inc.*, 148 F. Supp. 2d 276, 278 (S.D.N.Y.

6

2001) ("While defendant protests that the Court may not consider the jurors' statements . . . Rule 606(b) is silent regarding inquiries designed to confirm the accuracy of a verdict . . ."); *Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 952 F. Supp. 667, 671 (C.D. Cal. 1996) ("this rule does not bar inquiry into an ambiguous or inconsistent verdict," *citing*, 3 Weinstein, *Weinstein's Evidence* ¶ 606 [04] at 606–30 (1995)).

The jury chose for its final damages award $77,000 with respect to what was indisputably a $30,000 contract. There was no reasonable ground for the jury to conclude that there was a sufficient evidentiary basis to award a penny more, much less an additional $44,000. The jury misunderstood or ignored the Court's straightforward instructions on damages and made an improper award. Accordingly, Defendants ask that the damage award be reduced to $30,000. In the alternative, Defendants ask the Court for a new trial on the damages issue alone under Rule 59(a).

    Respectfully requested,

By: _____
    RONALD D. COLEMAN

COLEMAN LAW FIRM, PC
50 Park Place – Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com

By: /s/ *John Daniel Hull*
JOHN DANIEL HULL
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C. 20005
202-429-6520 o
619-895-8336 c
jdhull@hullmcguire.com

*For Defendants Hull McGuire PC and J. Daniel Hull*

Dated: March 10, 2025

7

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 10, 2025, he served this Motion To Amend Judgment or For a New Trial upon counsel for Plaintiffs via the ECF system.

                                                RONALD D. COLEMAN