UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN LUX RESEARCH, et. al. | Case 1:23-cv-00523-JEB |
| *Plaintiffs*, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND JUDGMENT OR FOR A NEW TRIAL [DKT. 152]** |
| v. | |
| HULL MCGUIRE PC, et. al. | |
| *Defendants*. | |

Plaintiffs In Lux Research and Lindsay Olson respectfully submit Plaintiffs'
Memorandum in Opposition To Defendants' Motion To Amend Judgment Or For A New Trial
[Dkt. 152] (the "Motion"), brought under Fed. R. Civ. P. 59(e) and 59(a), or in the alternative
under Rule 50. None of the grounds asserted by the Hull Defendants meet the high threshold
required to amend the judgment, reduce the jury's damages award, or warrant a new trial.

## I.    **INTRODUCTION**

After a two-day trial, the jury returned a verdict in Plaintiffs' favor on their breach of
contract claim, awarding $77,000 in compensatory damages. *See* Dkt. 142 ("Judgment"). This
case arose from Defendants' nonpayment under a Texas-based services contract (the "Contract")
pursuant to which Plaintiffs conducted polling, undertook data analysis, and authored the
October 2022 Report (the "Report"). The jury's award was supported by trial testimony and
exhibits establishing both the agreed-upon Contract price of $30,000 plus the reasonably
foreseeable loss of access to data valued at about $50,000 caused by the Hull Defendants'
breach.

Defendants now seek either remittitur or a new trial "on the damages issue alone." Mot. at 1. Their Motion rests on two unsupported claims: (1) the jury improperly added interest—possibly compounded interest—to its award, and (2) the jury misapplied or ignored the Court's instructions by awarding "indirect" rather than "direct" damages. *Id*. These arguments misstate the law and mischaracterize this record.

The jury was instructed not to add interest (Dkt. 136 at 8 and Trial Tr. 55:1-2, January 28, 2025), and the verdict form made no mention of interest (Dkt. 138). Rather, the instructions correctly stated that damages may include "such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract." Dkt. 136 at 8. Neither the verdict form nor the instructions imposed a "$30,000 contract" damages cap but instead was a general verdict form. *See* Dkts. 136, 138. Defendants' shoot an airball trying to reframe the jury verdict based on what they describe as impermissible "indirect" damages, which is unsupported by any authority and contradicted by the evidence presented at trial.

Defendants also raise unsubstantiated claims of juror misconduct, suggesting that the jury disregarded the Court's instructions and the weight of evidence. However, post-verdict challenges to jury deliberations are strongly disfavored, absent compelling evidence of extraneous influence or legal error—neither of which is present here. While the jury's questions during deliberations suggest confusion about the copyright claim (Dkt. 139), they ultimately rendered a verdict on the breach of contract claim based on the weight of the evidence, materially altering the parties' legal relationship. Dkt. 140.

The jury's verdict should not be disturbed.  The Judgment should only be altered to reflect Plaintiffs' bill of costs, motions for pre- and post-judgment interest and attorneys' fees. *See* Dkts. 143, 144, 145. The Hull Defendants' Motion should be denied in full.

2

## II.    <u>LEGAL STANDARD</u>

### A.  Fed. R. Civ. P. 59(a)

Rule 59 "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Freeman v. Giuliani,* 732 F. Supp. 3d 30, 44 (D.D.C. 2024) (cleaned up). This high threshold reflects the "well-settled" principle that new trials are reserved for exceptional cases—not for parties dissatisfied with a jury verdict. See *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004).

Under Rule 59(a), the Court may grant a new trial "on all or some of the issues" to either party "for any reason for which a new trial has heretofore been granted in an action at law in federal court." *See* Fed. R. Civ. P. 59(a)(1)(A). A new trial may be warranted where the jury has reached a "seriously erroneous" result, as evidenced by "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 43 (D.D.C. 2024) (citing *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015)) (cleaned up); s*ee also, Hudson v. Am. Fed'n of Gov't Emps.*, No. CV 17-1867 (JEB), 2024 WL 1716646, at *2 (D.D.C. Apr. 22, 2024), <u>aff'd in part,</u> No. 24-7077, 2024 WL 4248501 (D.C. Cir. Sept. 18, 2024).

But "[a] jury verdict stands unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Lane v. Dist. of Columbia*, 887 F.3d 480, 486 (D.C. Cir. 2018); *see also Morris v. Pruitt*, 308 F. Supp. 3d 153, 166 (D.D.C. 2018) (Boasberg, J.) (cleaned up) ("A court should be especially reluctant to disturb a jury verdict when the trial involves simple issues and highly disputed facts.").

**B. Fed. R. Civ. P. 59(e)**

Similarly, while Rule 59(e) permits a court to alter or amend a judgment, "it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Harper v. Marcorp, Ltd.*, No. 20-CV-980 (BAH), 2023 WL 1765198, at *3 (D.D.C. Feb. 3, 2023) (cleaned up). Reconsideration of a judgment after entry "is an extraordinary remedy which should be used sparingly." *Id.*

Although Courts have discretion to grant a new trial where a verdict is against the clear weight of the evidence or the damages are excessive, that discretion is narrowly constrained. "The trial court [...] is not supposed to supplant the jury's view with that of its own and order a new trial simply because the court would have weighed the evidence differently from the jury. Rather the court's discretion to order a new trial is limited to those situations where the verdict represents a miscarriage of justice." *Machesney v. Larry Bruni, M.D., P.C.*, 905 F. Supp. 1122, 1130 (D.D.C. 1995).

**C. Fed. R. Civ. P. 50(a).**

Before a case is submitted to the jury, Rule 50(a) permits judgement as a matter of law only when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 43 (D.D.C. 2024) (quoting *Dupree v. Younger*, 598 U.S. 729, 737, 143 S.Ct. 1382, 215 L.Ed.2d 636 (2023) and FED. R. CIV. P. 50(a), (b)). This is a "very high bar" requiring the moving party to show that, "after viewing the evidence in the light most favorable to the nonmoving party," no reasonable jury could have ruled against them. *McNair v. Gov't of D.C.*, 124 F. Supp. 3d 13, 19 (D.D.C. 2015) (Boasberg, J.).

4

**D.  Fed. R. Civ. P. 50(b)**

After a verdict and entry of judgment, Rule 50(b) "permits a disappointed party to file a

renewed motion for judgment as a matter of law (which may also include a request for a new

trial under Rule 59)." *Dupree,* 598 U.S. at 732. But courts may grant judgment as a matter of law

only if "the evidence and all reasonable inferences that can be drawn therefrom are so one-sided

that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow*

*v. Re–Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007) (cleaned up).

Under this "exceedingly demanding" standard, the Court must view the evidence in the

light most favorable to the verdict, draw all reasonable inferences in the non-movant's favor, and

may not substitute its view for that of the jury. *See, Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C.

Cir. 2021); *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996). The Court also

cannot weigh the evidence or assess credibility and must disregard any favorable evidence the

jury was not required to believe—that is, evidence that was not "uncontradicted and

unimpeached." *Freeman* 732 F. Supp. 3d at 43 (citing to *Radtke v. Lifecare Mgmt. Partners*, 795

F.3d 159, 163 (D.C. Cir. 2015); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151

(2000)).

Even if the Court finds the jury's conclusion "unpersuasive" or "would have reached a

different result" as factfinder, that is not a basis to overturn the verdict. *Berkley Insurance Co., et*

*al. v. Federal Housing Finance Agency, et al.,* No. 1:13-CV-1053-RCL, 2025 WL 823938, at *4

(D.D.C. Mar. 14, 2025). Courts do not "lightly disturb a jury verdict." *Id.*

**E.  Applicable Law**

Defendants' Applicable Law section simply recycles the same flawed arguments in their

earlier filings opposing Plaintiffs' bill of costs (Dkt. 143), motion for pre- and post-judgment

interest (Dkt. 144), and motion of attorneys' fees (Dkt. 145). *See* Mot. at 3-4. Plaintiffs

incorporate by reference their arguments set forth in support of those motions and in their

consolidated reply brief. *See* Dkts. 153, 154.

Regardless, the legal standard for breach of contract under Texas and D.C. law is

substantially the same. Both jurisdictions require a plaintiff to prove the existence of a valid

contract, performance or excuse, breach, and resulting damages. Compare *Atrium Med. Ctr., LP*

*v. Houston Red C LLC*, 546 S.W.3d 305, 311 (Tex. App. 2017), aff'd, 595 S.W.3d 188 (Tex.

2020) with *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1244–45

(D.C. 2024). Both jurisdictions require proof of a valid contract, performance or excuse, breach,

and reasonably foreseeable damages. The only material distinction between D.C. and Texas

arises in the scope of post-judgment relief—specifically, the availability of pre-judgment interest

and attorneys' fees—issues addressed in Plaintiffs' interest and fee motions.

### III.    ARGUMENT

### A.  A New Trial Under Rule 59 is Not Warranted.

Courts in this District routinely reject Rule 59 motions premised on nothing more than

dissatisfaction with a jury's decision. That is precisely what Defendants seek here—and the law

does not permit it. "Although parties may certainly request a new trial or amended findings

where clear errors or manifest injustice threaten, in the absence of such corruption of the judicial

processes, where litigants have once battled for the court's decision, they should neither be

required, nor without good reason permitted, to battle for it again." *Morris*, 308 F. Supp. 3d at

159 (Boasberg, J.) (cleaned up).

The jury instructions on breach of contract correctly stated that damages may include

either (1) losses that arose naturally from the defendant's breach, or (2) losses reasonably

contemplated by the parties at the time of contracting. Dkt. 136 at p. 8, Jury instruction attached as Exhibit A. Defendants' Rule 59(a) motion fails to address either basis for recovery—let alone challenge the substantial weight of evidence supporting the jury's damages award under either theory. Instead, Defendants offer a generalized attack on the size of the verdict, without meaningful analysis of this trial record. That falls far short of the high bar required to disturb this jury verdict and the Judgment.

This Court has previously described such tactics as akin to "[t]he old carnival game of 'pitch 'til you win.'" *Machesney v. Larry Bruni, M.D., P.C.*, 905 F. Supp. 1122, 1130 (D.D.C. 1995). There, as here, the losing party challenged the verdict as excessive, unsupported, and procedurally flawed—and the court rejected those arguments wholesale. The same result should follow here: Defendants have not shown that the jury's verdict was seriously erroneous, excessive, or the result of any unfairness.

   *1. The damages were foreseeable and within the parties' contemplation.*

The jury's award was firmly grounded in evidence supporting foreseeable losses—specifically, the value of the lost polling data caused by Defendants' breach of nonpayment. Under settled law, contract damages may include losses that arise naturally from the breach or that the parties reasonably contemplated at the time of contracting. *See* Standardized Civil Jury Instr. for D.C. § 11.31 (foreseeable damages "are the sort that the parties would have reasonably envisioned, or are the sort that would flow naturally and obviously from the breach of the contract."); *Sears v. Aldridge*, 290 A.2d 682, 832–33 (D.C. 1972) (finding it foreseeable that defendant's failure to provide air conditioning would result in lost income to coffee shop).

Defendants attempt to undermine this well-settled standard by citing to *Klayman v. Judicial Watch, Inc.*, 255 F. Supp. 3d 161, 169 (D.D.C. 2017), for the proposition that damages

must be limited to "direct" harm. That argument is both misplaced and misleading. *Klayman* involved alleged reputational injury arising from a defamation claim—not a services contract— and contains no analysis of a "direct vs. indirect" damages framework. *Klayman* actually reaffirms the foreseeability standard Defendants seek to displace, expressly citing both the D.C. Standardized Jury Instruction and *Sears*, the same authorities relied on above. Their reliance on *Klayman* not only fails, it backfires.

The jury here was correctly instructed, and Defendants did not object. This record contains ample testimony and documentation showing that Plaintiffs' losses—including the lost value of polling data—were foreseeable and within the parties' reasonable contemplation at the time of contracting when Defendants failed to pay the $30,000. Plaintiff Olson's testimony and documentary evidence at trial supports the $77,000 compensatory damages award as "losses as may fairly be considered to have arisen naturally from the Defendant's breach of contract." Dkt. 136 at 8. Plaintiff Olson testified that the agreed-upon $30,000 contract price reflected a discounted rate, contingent on timely payment, and that Plaintiffs would retain approximately $50,000 in polling data as a benefit of the bargain. The foreseeability of these losses was discussed in pre-contract negotiations and confirmed in testimony. Relevant portions of Plaintiff Olson's testimony are attached as Exhibit B.

Plaintiffs also testified that timely payment of a discounted rate of $30,000 allowed them to subscribe to an additional data plan, which in turn they would reuse for other projects—but only if Defendants performed under the contract (i.e., paid Plaintiffs on time). Trial exhibits corroborate this arrangement, including the adding data access for polling four jurisdictions, Plaintiffs' contemporaneous conversations with Defendant Hull prior to contract formation about the discounted rate and access to the data for future use. *See* Dkt. 135, Trial Exs. 3 (invoice for

$27,500), 4 and 5 (emails and updated invoice), and 7 (invoice for $1,625).

The jury was entitled to weigh this evidence and find that the parties reasonably contemplated Plaintiffs retaining the data (valued at $50,000) which required payment ($30,000) for access, and that this benefit was lost due to Defendants' breach. The record supports that the award was reasonably foreseeable and naturally flowed from Defendants' breach.

2. *The jury's award was based on losses proven with reasonable certainty.*

To recover consequential damages under either D.C. or Texas law, a plaintiff must prove losses with reasonable certainty. *See Sears*, 290 A.2d at 833. This standard does not require mathematical precision, only a reasonable basis in the record. *See*; *Samaritan Inns*, 114 F.3d at 1235; and *Klayman*, 255 F. Supp. 3d at 169–70 ("if a breach of contract causes the plaintiff to lose out on identifiable professional opportunities, the plaintiff may recover damages for such loss when the monies for loss of the other employment are rationally calculable.).

Defendants' reliance on *Klayman* and *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 23 (D.D.C. 2009), is misplaced. *Klayman* addressed speculative reputational harm in a defamation case, not a services contract. *Capitol Justice* involved a breach of contract involving lending money, not breach of a services contract.

At trial, Plaintiffs presented extensive evidence and testimony showing that the $30,000 contract price was a discounted rate, contingent on timely payment.  See Ex. B.  Plaintiff Olson testified that the agreement also included an estimated $50,000 in polling data (including access) that Plaintiffs would retain if Defendants performed. This arrangement, discussed during negotiations, was made possible by subscribing to a data plan—access that was lost when Defendants failed to pay. Olson's testimony was corroborated by contemporaneous emails and invoices. *See, e.g*., Dkt. 135, Trial Exs. 3, 4, 5, and 7.

Notably, Plaintiffs did not seek lost profits or speculative future revenue—only the Contract price of $30,000 and the value of the data lost due to the breach, $50,000. The jury credited this evidence. Defendant Hull, by contrast, failed to rebut this evidence with any credible testimony or documentation. The jury was entitled to resolve those conflicts. *See Morris*, 308 F. Supp. 3d at 166 (Boasberg, J.) ("[c]redibility determinations and the weighing of evidence are [best] left to juries rather than judges.").

Defendants also mischaracterize Plaintiffs' trial testimony as disavowing damages tied to a $18,500 Aristotle invoice (Trial Ex. 1). Whether or not the jury considered that invoice, the overall evidence—including the $30,000 contract, $46,000–$50,000 in data, and Hull's own $1,500 "loan" to pay for access to the data—amply supports the award. Precise arithmetic is not required. *See Miller*, 608 F.3d at 905 (courts allow estimates where misconduct prevents exact computation); *Bigelow v. RKO Radio Pictures, Inc*., 327 U.S. 251, 264 (1946).

Indeed, Olson testified the Report required about 42,000 survey responses (valued at $2/question, or about $84,000(Trial Tr. 200:25 - 201:8) across four jurisdictions so Hull knew what she normally charged.  She also testified about the cost of acquisition of call and email data. Trial exhibits reflected three Aristotle invoices—$18,500 (Trial Ex. 1), $27,500 (Trial Ex. 3, covering DC, DE, PA, and VA), $1,625 for email data (Trial Ex. 7), and an invoice from Enghouse Interactive for $2,150 in call data (Trial Ex. 8).  $30,000 + $18,500 + $27,500 + $1,625 + $2,150 - $1,500 (the $1,500 "loan" Hull made to Olson to preserve access to data) = $78,275.  However, Plaintiffs were not seeking the value of the services, but Plaintiff instead accepted the $30,000 (Contract price, Trial Ex. 5) plus value of the data of about $50,000. Even though the jury's math was not exact, the verdict was within the range supported by the weight of the evidence in this record and based on reasonable certainty that was not challenged by

Defendants. That is more than sufficient to uphold the award.

Juries are entitled to approximate damages with flexibility—particularly where, as here, a defendant's own conduct frustrates precise calculation. *See Samaritan Inns*, 114 F.3d at 1235; *Miller*, 608 F.3d at 905; *Bigelow*, 327 U.S. at 264; *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-CV-976 (CRC), 2017 WL 5905509, at *5 (D.D.C. Nov. 28, 2017).

At bottom, the jury weighed the evidence, resolved credibility disputes, and returned a verdict supported by this record. Defendants' dissatisfaction with the result does not meet Rule 59's high standard. Their Motion should be denied.

### B.  There is No Evidence for a Directed Verdict Under Rule 50.

Defendants renewed motion for a directed verdict under Rule 50(b) fares no better than their request for a new trial. Rule 50 does not permit a court to substitute its view of the evidence for that of the jury simply because the losing party disagrees with the result. Judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *Dupree*, 598 U.S. at 737. This is a "demanding" standard. *Xereas*, 987 F.3d at 1135. The Court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in their favor, and refrain from reweighing the evidence or assessing witness credibility. *Id.*; *Reeves*, 530 U.S. at 150–51.

Plaintiffs presented sufficient evidence to support the jury's verdict, as outlined above. The evidence in this record was sufficient for the Court to deny Defendants' Rule 50(a) motion at trial—and it remains sufficient now to deny it again. Defendants' core defense—that this was merely a $30,000 breach—was presented to the jury and rejected based on credible testimony and documents in the record. As the D.C. Circuit has emphasized, Rule 50 is not a vehicle for

rearguing factual disputes or relitigating credibility determinations. *Xereas*, 987 F.3d at 1135.

Moreover, Defendants largely recycle the same arguments raised under Rule 59, asserting that the award was excessive, the jury misunderstood the instructions, and improper amounts were included. None of these claims come close to satisfying the high bar of Rule 50. The jury had a legally sufficient basis to find for Plaintiffs, and its verdict and the Judgment must stand. The Motion should be denied.

### C.  The Record Contains No Credible Evidence that the Jury Added Interest to the Damages Awarded to Plaintiffs

Defendants also contend—without evidence—that the jury disregarded the Court's instructions and improperly included compound interest in arriving at the $77,000 damages figure. This argument fails both legally and factually.

First, the record makes clear the jury was not instructed to award interest. See Trial Tr. 55:1–3 (Jan. 28, 2025). The verdict form did not include a line for pre-judgment interest. Nor is there any evidence that the jury attempted to calculate interest in its award.

Second, Defendants' theory hinges entirely on conjecture about what the jury "must have done." But Rule 606(b) bars inquiry into a jury's deliberations or motivations, absent evidence of extraneous outside influence such as bribery or exposure to out-of-court materials. *See Tanner v. United States*, 483 U.S. 107, 117–21 (1987). No such evidence exists here. Courts in this District routinely reject attempts to second-guess verdicts based on speculation or hearsay about jury deliberations. *See Hudson v. Am. Fed'n of Gov't Emps.*, No. 17-cv-1867 (JEB), 2024 WL 1716646, at *8 (D.D.C. Apr. 22, 2024), aff'd in part, No. 24-7077, 2024 WL 4248501 (D.C. Cir. Sept. 18, 2024) (Boasberg, J.) (rejecting speculation about jury motives where verdict form permitted damages without limiting language and no evidence of confusion or misconduct).

Defendants offer no declaration, affidavit, or competent evidence to support their

assertion that interest was improperly included. Their claim rests solely on the fact that the jury awarded more than $30,000. But as discussed above, the jury was presented with competent evidence—including testimony and exhibits—showing that Plaintiffs' damages exceeded the invoice price due to the loss of access to valuable data caused by Defendants' breach.

Speculation is no substitute for proof. Having failed to present any admissible evidence to impeach the jury's verdict, the Hull Defendants' Motion should be denied.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Hull Defendants' Motion in full.

Dated: March 24, 2025

Respectfully submitted,

JAMES H. BARTOLOMEI, III P.A.

By: /s/ *James H. Bartolomei*
James Bartolomei Esq.
Of Counsel at Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com
District Bar Number AR0007

*and*

Bryan D. Hoben, Esq.
Hoben Law
1112 Main Street
Peekskill, New York 10566
347-855-4008
bryan@hobenlaw.com
District Bar Number NY0534

*Attorneys for Plaintiffs*

13